## PARAMOUNT FAMOUS LASKY CORPORATION OF NEW YORK et al. v. STINNETT et al. (No. 788.)

Court of Civil Appeals of Texas. Waco.
March 28, 1929.

Rehearing Denied May 16, 1929.

Phillips, Townsend & Phillips and Tom Scurry, all of Dallas, for appellants.

Moroney & Moroney, of Dallas, for appellees.

GALLAGHER, C. J. This suit was instituted by appellees, R. J. Stinnett and S. Charninsky, against appellants, Paramount Famous Lasky Corporation and six subsidiary corporations, to recover $150,000 actual and $300,000 exemplary damages for the alleged "wanton, malicious, deliberate and unlawful destruction of plaintiffs' business, in violation of the laws against trusts and conspiracies in restraint of trade," etc. They further alleged that they were forced to sell out and retire from the ownership of the Capitol Theater (in Dallas) and to retire as operators from the class A theater business, and that their business and livelihood as operators of such theaters had been wrongfully and illegally destroyed by appellants.

Appellees, on September 30, 1923, owned the lease on a building in Dallas known as the Capitol Theater, which had theretofore been run as a second class moving picture house. They then organized the Capitol Amusement Company, a corporation, with $10,000 capital stock. Appellees each subscribed and paid for $3,000 of said stock, and H. Charninsky subscribed and paid for $500 thereof. The

remainder thereof was sold to other parties. The annual rental on said lease was $30,000. Appellees, or one of them, had prior to the organization of said corporation deposited with the landlord the first month's rent. Immediately on perfecting such organization said deposit was replaced with money of the corporation and the original deposit returned. Thereafter the corporation paid the rental on said lease. Appellee Stinnett was president, H. Charninsky vice president, and appellee S. Charninsky secretary and treasurer of said corporation. Within a few months after the organization thereof, appellees Stinnett and S. Charninsky acquired all the capital stock of said corporation except one share, which was retained by H. Charninsky. Said corporation immediately upon its organization began the operation of said Capitol Theater as a class A moving picture show. Subsequently it bought and paid for the fixtures and equipment used therein and made necessary improvements on the building. Appellees together acted as managers of said theater. Each drew from the earnings thereof an annual salary of $10,800. H. Charninsky was also employed by said corporation and paid an annual salary of $5,200. After the payment of said salaries and other expenses, the remaining earnings of said corporation were distributed among the stockholders thereof as dividends. Appellees state in their testimony that they operated said theater "through" said corporation, and that they always treated the proposition as a partnership between them.

Appellees from the first experienced some difficulty in securing high class films for exhibition in said theater. Some pictures were secured by them from Harold B. Franklin, alleged to have been agent and manager in the distribution of films for all the defendants, and some from other sources. In January, 1925, Franklin agreed with Charninsky to release to him for exhibition in said theater one-half of the pictures produced by First National and available for exhibition during the coming season of 1925–26. Shortly thereafter friction developed between said Franklin and appellees, and according to the testimony of Charninsky, Franklin attempted to evade compliance with said contract by refusing to meet him for the purpose of making selection of the pictures they were to have for exhibition, respectively. Finally, however, by subterfuge, Charninsky secured a meeting and the pictures available were apportioned according to said agreement. The increasing friction culminated a day or two later in a final interview between Charninsky and Franklin, in which Franklin became greatly excited and cursed and indicated a purpose to assault him. The conclusion of said interview was a declaration by Franklin that he would not renew said contract and would see that Charninsky did not get a decent picture to operate said theater. Appellees became alarmed at said threat, and notwithstanding they had under contract sufficient pictures to run said theater until the fall of 1926, they decided that they would sell the same. On November 7, 1925, they did sell the same to Universal Pictures Corporation for a net profit on their investment of $29,700. Said sale was effected by appellees transferring the lease, which remained in their name, to said corporation, and by also transferring to it their entire capital stock in said Capitol Amusement Company. H. Charninsky also transferred to it the share of stock held by him. Appellee Charninsky was thereupon employed by said corporation as manager to operate said theater, and continued as such until said corporation leased the theater to another company.

There was a trial by jury on special issues. The findings of the jury are summarized by appellants with substantial accuracy as follows:

"1. That at the time of and prior to the sale by appellees of the Capitol Theater, appellants were under an agreement, among themselves, to control or limit the distribution of high class moving picture films, suitable for exhibition in Class A theaters, for the purpose of monopolizing such films or stifling competition.

"2. That appellants carried out such agreement by procuring the practical or substantial control of the distribution to the exhibitors of high class films suitable for use in Class A theaters.

"3. That in carrying out such agreement and exercising such control, appellants excluded or prevented appellees from procuring, by contract or otherwise, in advance, high class films sufficient in number and suitable for profitable use in the Capitol Theater during the season of 1926 and 1927.

"4. That in pursuance of the agreement and in carrying out the same, appellants threatened appellees in substance and to the effect that appellants would see to it that appellees got no more good pictures for the theater picture show business.

"5. That at the time said threats were made it was the intention of appellants to carry out the threats and that appellants could and would have prevented appellees from procuring the class of pictures appellees desired in sufficient numbers to operate the Capitol Theater profitably in the future.

"6. That at the time appellees sold out the Capitol Theater, that by reason of the agreement and control of the high class films by appellants, and by reason of the threat or threats made by appellants, or by reason of the agreement, control, and threats, that appellees had reasonable grounds to fear and did fear that they would be unable to procure high class films in the future, and feared that they would not be able to operate the Capitol Theater as a profitable business after exhausting the films on hand, and that they

were thereby caused to sell out the Capitol Theater and cease the operation of it.

"7. That by reason of the agreement and control of appellants, and by reason of their threat or threats and by the sale by appellees of the Capitol Theater, and their cessation to operate the same for themselves, that appellees sustained pecuniary loss or damage.

"8. That the actual damages sustained by appellees in the past, under the court's charge, was $60,000.00; that damages which would accrue in the future amount to $90,000.00 finding the total of actual damages of $150,-000.00.

"9. They awarded appellees $187,500.00 as exemplary damages."

The court instructed the jury, in answering special issue No. 8, to find and state the amount of past damages in one answer and to find and state in another answer the amount of damages that would accrue in the future. The court in that connection further instructed the jury, in substance, to assess the past damages at such sum as would reasonably compensate the plaintiffs for the losses sustained by them, and to take into consideration in estimating the amount of the same only the net profits which they might reasonably have been expected to make by operating said Capitol Theater after the sale of the same and down to the date of trial, deducting from such amount profits made by them in the sale of said Capitol Theater and such net moneys, if any, as they had earned in other employment or enterprises since said sale. He further instructed the jury to assess plaintiffs' future damages, if any, at such sum as they found plaintiffs would reasonably have earned by operating such theater in the future, from and after the date of trial, but not later than the date of the expiration of their lease thereon, less such sums as they might reasonably be expected by use of ordinary diligence to earn in the future during such period. The court rendered judgment on said findings of the jury in favor of appellees against appellants, jointly and severally, for the sum of $337,500, with interest from date of judgment and costs of suit. Upon hearing of appellants' motion for new trial the court required appellees to remit certain amounts, which they did. The amount of appellees' recovery was finally fixed at $318,770. Hence this appeal.

## Opinion.

■ Appellants by their first proposition present as ground for reversal the action of the court in rendering judgment for appellees on the verdict returned by the jury. They contend in this connection that under the pleadings and undisputed evidence in this case, the cause of action on which appellees recovered judgment was vested in the Capitol Amusement Company as a corporation, and not in appellees as individuals. The undisputed evidence shows that said corporation was duly formed, and that it took charge of the building known as the Capitol Theater and conducted a moving picture show therein. While the lease on said building, held by appellees in their individual capacity, was not formally assigned to the corporation, said building was immediately surrendered to and used by it in conducting such business. Said company bore the burdens assumed by appellees in said lease and enjoyed the exclusive possession, use, and benefit thereof. When said company was organized, took possession of said building, and began the operation of a moving picture theater therein, appellees together owned only three-fifths of the capital stock thereof. They were officers, directors, and employees of said corporation, but they were not the corporation itself. It was a separate entity and was as such in possession of said building and operating said theater. The subsequent acquisition by appellees of all except one share of the capital stock of said corporation did not of itself dissolve the same nor otherwise affect the legal status. Said corporation remained a separate entity, distinct and apart from appellees, notwithstanding they owned such an overwhelming majority of its capital stock. Appellees as officers, directors, and employés of said corporation continued to operate said theater and to receive out of its earnings their stipulated salary as such, and to participate in the distribution of the net earnings thereof as stockholders therein. When appellees determined to dispose of said theater, they transferred the lease, the legal title to which at least remained in them, transferred their stock in the corporation, and surrendered possession. H. Charninsky, the only other stockholder, also transferred to the purchasers the share held by him. The control and management of said corporation thereby passed to the purchasers of said stock. Said transfer did not of itself dissolve the corporation. Its identity was not affected by the entire change in the personnel of its stockholders. The findings of the jury, considered in connection with the charge recited above, show that the recovery awarded appellees herein is based solely on the supposed loss of profits which would have accrued if the operation of said Capital Theater had been continued until the end of the lease under the conditions which existed prior to the sale. If such operation had been continued under such conditions, the profits realized therefrom would have belonged to the corporation. Appellees' right to participate therein would have been based primarily on their ownership of its stock. It is true that if the operation of said theater under such existing conditions had continued, its earning capacity would have been reflected in the value of such stock. It is also true that if the impairment or destruction of such business was threatened or imminent, the value of such stock was necessarily impaired. The cause of action for injury to or destruction of

128

the property of a corporation or the impairment or destruction of its business is nevertheless vested in the corporation, as distinguished from its stockholders. In such cases the injury to the corporation is direct and the injury to the holders of its stock remote. A recovery by the corporation inures to their benefit in proportion to their respective holdings and affords them compensation for the indirect or consequential loss sustained by them. 14 C. J. p. 54, § 7; Id., p. 924 et seq., § 1444; Evans v. Brandon, 53 Tex. 56, 60; Cates v. Sparkman, 73 Tex. 619, 11 S. W. 846, 848, 849, 15 Am. St. Rep. 806; Hamilton v. James A. Cushman Mfg. Co., 15 Tex. Civ. App. 338, 39 S. W. 641, 642, 643; Porter v. Sabin, 149 U. S. 473, 13 S. Ct. 1008, 1010, 37 L. Ed. 815; Green v. Victor Talking Machine Co. (C. C. A.) 24 F.(2d) 378, 380, 381, pars. 4 to 6, inclusive; United Copper Securities Co. v. Amalgamated Copper Co. (C. C. A.) 223 F. 421, 422, 423; Loeb v. Eastman Kodak Co. (C. C. A.) 183 F. 704, 709; Button v. Hoffman, 61 Wis. 20, 20 N. W. 667, 50 Am. Rep. 131; 6 Fletcher's Cyc. Corps. pp. 6868, 6869. The rule is the same when all the stock in a corporation is held by a single person, or by persons acting together. 14 C. J. p. 865, § 1321; Id., pp. 924, 925, § 1444; 6 Fletcher's Cyc. Corps. p. 6862; Id., p. 6869; 1 Fletcher's Cyc. Corps. pp. 47–49. The fact that appellees may have considered that they were operating said theater "through the Capitol Amusement Company," as pleaded by them, and the further fact that they may have "always treated the entire proposition from top to bottom as a partnership" between them, as testified by Charninsky, did not affect the legal status nor the rights of the corporation. Appellants' contention is sustained.

The judgment of the trial court is reversed, and the cause remanded.