COMMONWEALTH OF MASSACHUSETTS v. EDGAR B. DAVIS ET AL.

No. 8011. Decided December 16, 1942.
Rehearing overruled February 24, 1943.
(168 S. W., 2d Series, 216.)

400

*Robert T. Bushnell,* Attorney General of Massachusetts, *Jacob Lewiston,* Assistant Attorney General of Massachusetts, *Truehart, McMillan & Russell,* of San Antonio, for petitioners.

A resolution passed by the Legislature of Massachusetts did not ratify the wrongful act of its agent in executing a writ of garnishment, the legislature not having knowledge of the circumstances rendering the garnishment wrongful, and said resolution could not, on account of the form thereof, waive sovereign nonliability. Caples v. Cole, 129 Texas 370, 102 S. W. (2d) 173; Sutherland v. DeLeon, 1 Texas 250; Black v. Baker, 130 Texas 454, 111 S. W. (2d) 706; Tynberg v. Cohen, 67 Texas 220.

*S. J. Brooks, Clinton G. Brown, W. L. Matthews, Brooks, Napier, Brown & Matthews,* all of San Antonio, *Fred L. Blundell* and *Tom Gambrell,* both of Lockhart, and *Dan Moody,* of Austin, for respondent, Davis.

The Court of Civil Appeals erred in reversing and rendering the judgment in favor of Davis, based upon the jury's verdict with reference to the loss of the lease, because it appeared that said lease was lost solely because of the issuance and service of the said writ of garnishment. Gonzales v. City of Galveston, 84 Texas 3; St. Louis S. W. Ry. Co. v. Alexander, 106 Texas 518; 172 S. W. 709; Texas & Pac. Ry. Co. v. Bigham, 90 Texas 223.

*Richard L. Hughston,* and *Albert B. Hall,* both of Dallas, filed briefs for the Fidelity & Deposit Co. of Md., sureties on the garnishment bond.

*Ike D. White, H. Grady Chandler* and *John W. Stayton,* all of Austin, and *James D. Williamson,* of Waco, filed briefs as amici curiae.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

In 1933 the Commonwealth of Massachusetts recovered judgment in the Massachusetts state courts in the sum of $534,917.48 against Edgar B. Davis for delinquent income taxes, alleged to be due for the year 1926. In 1937 said Commonwealth brought this suit against Davis in a district court of this State to recover judgment on its Massachusetts tax judgment, and as ancillary thereto caused a writ of garnishment to issue to the United North and South Development Company, a corporation, requiring it to answer, among other things, what stock, if any, Davis owned in said corporation. Davis reconvened for damages for alleged wrongful suing out of the writ of garnishment. Upon the trial the court instructed a verdict in favor of the Commonwealth of Massachusetts for the sum of $724,904.16, that being the amount of its Massachusets judgment, interest, and costs. Davis' cross-action was submitted to the jury, and the jury found that the writ of garnishment had been wrongfully sued out, and that Davis had suffered damages in two items, one in the sum of $1,000,-000.00, and the other in the sum of $550,000.00. Thereupon the trial court offset the Commonwealth's claim, on its judgment for $724,904.16 against Davis' claim for damages in the sum of $1,550,000.00, and allowed Davis a net recovery against the Commonwealth in the sum of $825,095.84. Upon appeal, the Court of Civil Appeals denied Davis a recovery on the $1,000,-000.00 item of damages, but otherwise affirmed the judgment of the trial court. This resulted in a net judgment in favor of the Commonwealth for the sum of $174,904.16. 160 S. W. (2d) 543. Each party applied for writ of error to this Court, and both applications were granted.

■ The first question to be decided is whether full faith and credit must be given to the Massachusetts judgment upon which this suit was brought.

Davis urges that the judgment is void because the statute upon which the tax was based is unconstitutional. The statute, Chapter 62, General Laws of Massachusetts, 1921, provides that any inhabitant of the Commonwealth of Massachusets at any time between January 1 and June 30 of any year shall be subject to taxes for income received in the preceding year. Davis contends that this statute is unconstitutional because on its face it purports to tax persons residing out of the State on income received outside of the State, and is therefore so indefinite in its application as to violate the due process clause of

the Fourteenth Amendment to the Federal Constitution. In the case of Hart v. Tax Commissioner, 240 Mass. 37, 132 N. E. 621, the Supreme Judicial Court of Massachusetts (which is the highest court of that State) held, in effect, that an income tax levied in 1918 for income received during the year 1917 by one who was a resident of Massachusetts during 1918, but not during 1917, was invalid because the State had no extraterritorial authority to levy the tax against one who was not a resident of the State at the time the income was received. In the case of Kennedy v. Commissioner, 256 Mass. 426, 152 N. E. 747, the statute above referred to was construed to apply only to those who were inhabitants of the State at the time the income was received, and, as so applied, the statute was held to be constitutional. It should be noted that in the trial of the Massachusets case the jury found that Davis was a resident citizen of Massachusetts during the year 1926, for which the tax was assessed. Under these facts, it is probable that the statute, as applied to Davis in this case, would not be held unconstitutional by the Massachusetts court.

However, we do not deem it necessary for us to here determine whether or not the law under which the tax was assessed and unconstitutional. Under Article IV, Sec. 1, of the Constitution of the United States, we are required to give full faith and credit to the Massachusetts judgment if the court which rendered it had jurisdiction of the parties and of the subject matter of the suit.

The suit was brought in the Superior Court of Suffolk County, Massachusetts, for personal judgment against Davis for the unpaid income taxes. Davis signed an acceptance of service, and appeared by counsel and defended the suit. The case was tried before a jury, and resulted in a judgment in favor of the Commonwealth. Davis appealed, and the judgment was affirmed by the Supreme Judicial Court of Massachusetts. See Commonwealth v. Davis, 284 Mass. 41, 187 N. E. 33. Unquestionably as to parties the court had jurisdiction, because Davis voluntarily submitted himself to the jurisdiction of the court. As to subject matter, it is shown by the Massachusetts statutes admitted in evidence that the Superior Court is a court of general jurisdiction, having original jurisdiction of all civil actions, except those of which other courts have exclusive original jurisdiction. Section 3 and 4, Chapter 212. General Laws of 1921; Id., General Laws of 1932. It does not appear

that exclusive jurisdiction of income tax matters is vested by law in any other court. The court therefore had jurisdiction over both the person of the defendant and the subject matter of the suit.

■ Davis takes the position that under Hart v. Tax Commissioner, 240 Mass. 37, 132 N. E. 621, the Massachusetts income tax is a tax on property; and since the property from which this income was derived was located outside of Massachusetts, the court had no jurisdiction of the subject matter of the suit. We are not in accord with this view. Regardless of the construction placed by the courts of Massachusetts on its income tax law, it appears that the cause of action upon which the judgment was recovered was a personal claim against Davis for taxes. There was no attempt to fix a lien on Davis' property outside the Commonwealth or to affect the title thereto. The subject matter of the suit was not a *res* outside the boundaries of the Commonwealth, but a personal cause of action against Davis, and we see no reason why it was not within the jurisdiction of the Superior Court.

■ Since it appears that the Superior Court had jurisdiction of the parties and of the subject matter, it is not necessary for us to decide whether the statute is unconstitutional. The attack made by Davis upon the Massachusetts judgment is a collateral attack, and in order for such an attack to be successful the judgment must be void. W. T. Rawleigh Co. v. Little (Tex. Civ. App.), 32 S. W. (2d) 214 (writ refused) ; 26 Tex. Jur. 424. The question then arises whether a judgment based on an unconstitutional statute is void or merely erroneous. Of course, the validity of the judgment must be determined by the laws of Massachusetts, but, in the absence of pleading and proof of what the Massachusetts courts have held on this question, we shall presume that the Massachusetts law is the same as our own. United States Fidelity & Guaranty Co. v. Richey (Tex. Civ. App.), 18 S. W. (2d) 231 (writ refused) ; 26 Tex. Jur. 421, 439.

■ Although there is some authority to the contrary (See 6 R. C. L., p. 117, sec. 117; 12 C. J. 801.), we believe the correct rule, supported by the more numerous and better reasoned decisions, to be that where the unconstitutionality of a statute goes only to the merits of the cause of action, and not to the jurisdiction of the court, a judgment in a civil suit based thereon

is not void but merely erroneous, and remains effective until regularly set aside or reversed. King v. King (Tex. Civ. App.), 291 S. W. 645 (writ dismissed) ; New York Life Ins. Co. v. Breen, 227 Ia. 728, 289 N. W. 16; Chicot County Drainage Dist. v. Baxter State Bank, 308 U. S. 371, 84 L. ed. 329; Hanchett Bond Co. v. Morris, 143 Okla. 110, 287 P. 1025; Jones v. Mc-Graph, 160 Okla. 211, 16 Pac. (2d) 853; Forest Lumber Co. v. Osceola Lead & Zinc Mining Co. (Mo.), 222 S. W. 398; Arnold v. Booth, 14 Wis. 180; Woods Brothers Const. Co. v. Yankton County, 54 Fed. (2d) 304, 81 A. L. R. 300. See annotation, 36 A. L. R. 492, wherein it is stated that the rule in most jurisdictions is as above announced.

■ Applying this rule to the present case, it is clear that the question of the constitutionality of the Massachusetts income tax law relates to the merits of the cause of action—that is, whether Davis was liable to the Commonwealth for income taxes for the year 1926. Since the Superior Court had jurisdiction of the parties and of the subject matter, it had authority to decide this question either rightly or wrongly, and if it decided wrongly, Davis had his remedy by appeal. Under the authorities above cited, even though the statute be unconstitutional, the judgment is not void, and is entitled to full faith and credit. It does not matter that the question of its constitutionality was not actually raised in the Massachusetts suit, since it could have been raised therein and decided by that court—the rule being that the judgment is conclusive on every other matter which the parties might have litigated and had decided as incident to or essential connected with the subject matter of the litigation. Chicot County Drainage Dist. v. Baxter State Bank, 308 U. S. 371, 373, 60 Sup. Ct. 317, 84 L. ed. 329; Forest Lumber Co. v. Osceola Lead & Zinc Mining Co. (Mo.), 222 S. W. 398; Cleveland v. Ward, 116 Texas 1, 285 S. W. 1063, par. 14; Foster v. Wells, 4 Texas 101; Nichols v. Dibrell, 61 Texas 539; Freeman v. McAninch, 87 Texas 132, 27 S. W. 97, 47 Am. St. Rep., 79; 26 Tex. Jur. 11, 135.

Davis cites Barton v. State, 89 Texas Cr. Rep. 387, 230 S. W. 989, and Genzer v. Fillip (Tex. Civ. App.), 134 S. W. (2d) 730 (writ dism. judg. cor.) as contrary to the rule above announced. There it was held that a purported adjudication of insanity under an unconstitutional statute providing for an examination by a commission of experts appointed by the court instead of a trial by jury was without force as a judg-

ment and subject to collateral attack. Those cases are distinguishable because the invalidity of that statute did not relate to the merits of the case—whether the person was insane—but to the power or jurisdiction of the court to declare him insane on the recommendation of a commission appointed for that purpose, without giving him a jury trial in open court.

For the reasons above given, we hold that the Massachusetts judgment is entitled to full faith and credit, and that the trial court was correct in rendering judgment for the Commonwealth for the amount of its judgment debt.

The jury found that the writ of garnishment was wrongfully sued out, and this brings us to a discussion of Davis' claim for damages by reason thereof. We omit, as unnecessary, any discussion as to whether a sovereign State, such as the Commonwealth of Massachusetts, may be held liable in damages in a sister State for the wrongful suing out of a writ of garnishment.

The writ of garnishment was served on the United North and South Development Company, a Delaware corporation, operating under a permit in the State of Texas. Said corporation's stock was divided into 200,000 shares, 186,751 of which belonged to Davis. Davis was the chairman of its board of directors, and personally managed its business, and had theretofore furnished most of the capital upon which it had operated. It was largely dependent upon him for further capital upon which to operate. He personally financed or arranged the financing of the entire business affairs of the corporation, using his stock therein as collateral for loans to develop its oil properties when necessary. The corporation owned or had leases on large acreage of oil-producing land that had already been partly, but not fully, developed. The production was from a deep sand in a vicinity where it required approximately $100,000.00 to drill a well. The corporation had contracted with a driller to develop the land by drilling a number of wells. The driller was to operate mostly on credit—that is, he was to furnish the labor and most of the equipment, and would be paid for each well upon its completion. He depended largely on Davis, as general manager and principal stockholder of the corporation, to raise the funds to pay for developing the land. Upon the filing of the suit and the service of the writ of garnishment, the driller consulted his attorney, and upon being

informed that the litigation might result in a change in the management of the corporation, he refused to proceed further under his drilling arrangement. Neither Davis nor the corporation was thereafter able to raise funds with which to develop the land. It is claimed that as a result the property was not developed, and the value of Davis' stock depreciated. The jury found that the actual value of Davis's stock in the corporation was materially depreciated by the cessation of development of the corporation's property; that such cessation of development and consequent depreciation of the value of the stock was approximately caused by the suing out and continuing in effect of the writ of garnishment; and that $550,000.00 would compensate Davis "for the depreciation in actual value of the common stock held by him in United North & South Development Company."

■ It is apparent from the foregoing that Davis sought and recovered damages for injuries that were suffered primarily by the corporation, and only secondarily by him, by reason of his ownership of stock therein. The injuries were suffered by the corporation; and this resulted in a depreciation of the value of his stock, and he here seeks recovery for such depreciation. Ordinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to the stockholders. Generally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock. This rule is based on the principle that where such an injury occurs each shareholder suffers relatively in proportion to the number of shares he owns, and each will be made whole if the corporation obtains restitution or compensation from the wrongdoer. Such action must be brought by the corporation, not alone to avoid a multiplicity of suits by the various stockholders and to bar a subsequent suit by the corporation, but in order that the damages so recovered may be available for the payment of the corporation's creditors, and for proportional distribution to the stockholders as dividends, or for such other purposes as the directors may lawfully determine. 3 Hildebrand Texas Corporations, Sec. 763, pp. 148-164; Evans v. Brannon, 53 Texas 56; Paramount-Famous Lasky Corp. v. Stinnett (Tex. Civ. App.), 17 S. W. (2d) 125, (Com. App.), 37 S. W. (2d) 145; Cullum v. General

Motors Acceptance Corp. (Tex. Civ. App.), 115 S. W. (2d) 1196; 10 Tex. Jur. 785; Green v. Victor Talking Machine Co., 24 Fed. (2d) 378, 59 A. L. R. 1091; Annotation 59 A. L. R. 1099; Fletcher Cyclopedia Corporations (Perm. Ed.), Vol. 13, pp. 227, 229, 233; 14 C. J. 924; 18 C. J. S., sec.559, p. 1272.

There are authorities which recognize an exception to the above rule, where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder. The exception has been applied more often in cases where there was a fiduciary relationship which required the wrongdoer to protect the interest of the stockholder, and this duty was violated, and full relief to the stockholder could not be had through a recovery by the corporation. Moroney v. Moroney (Com. App.), 286 S. W. 167; Matter of Auditore's Will, 249 N. Y. 335, 164 N. E. 242, 62 A. L. R. 551; Richie v. McMullen, 79 Fed. 522; General Rubber Co. v. Benedict, 215 N. Y. 18, L. R. A. 1915F 617; 18 C. J. S. sec. 559, p. 1275.

We do not find it necessary, however, to determine which of these rules should be applied herein, because the case can be disposed of on other well-established rules.

■ It is a well-established rule in this State that one who is complaining of a wrongful injury can recover only for such damages as are proximately caused by the injury complained of. Foreseeableness or anticipation of injury is an essential element of proximate cause. The injury complained of must be the natural and probable consequence of the wrongful act— that is, it must be of such nature as would reasonably have been anticipated under the circumstances by a person of ordinary prudence. It is not necessary that it appear that the wrongdoer actually foresaw the precise course of the consequences of his wrongful act, but it must appear that he could or should reasonably have anticipated or foreseen that the injury complained of, or one of the same general character, would probably result from his wrongful conduct. Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; San Antonio & A. P. Ry. Co. v. Behne (Com. App.), 231 S. W. 354; Paris & G. N. Ry. Co. v. Stafford (Com. App.), 53 S. W. (2d) 1019, par. 1; Missouri-K-T Ry. Co. v. McLain, 133 Texas 484, 126 S. W. (2d) 474; Sullivan v. Flores, 134 Texas 55, 132 S. W. (2d) 110; Carey v. Pure Distributing Corp., 133 Texas 31, 124 S. W. (2d) 847; City of Dallas v. Maxwell (Com. App.), 248

S. W. 667; 27 A. L. R. 927; Humble Oil & Ref. Co. v. Woods (Com. App.), 292 S. W. 200.

It should be noted that this is not a case in which the stockholder has lost the benefit of a profitable sale of his stock by reason of the garnishment. His contention is that the corporation was depending on him personally by pledging his stock, or otherwise, to raise the money with which to develop the corportation's oil properties. He testified that the proposed plan of development of the corporation's oil properties could not be carried out because the impounding of his stock, which was approximately all the assets or collateral owned by him, prevented his financing the drilling of the properties, and caused the stoppage and cessation of their development; that if the properties had been developed many new wells would have been brought in, and that this would have added to the actual value of his stock, because its value necessarily would have increased as the value of the garnishee corporation's properties increased through development. The driller who had contracted to develop the corporation's oil properties testified that he did not carry out his part of the contract because he was relying on the management of the garnishee corporation by Davis to carry out the corporation's part of the contract, and that he feared that the sale of the stock under the garnishment proceedings would result in a change of the management of the properties on which the wells were to be drilled, and that the company might not be able to carry out its contract. Davis' theory is that but for the levy of the writ of garnishment, and the consequent cessation in the development of the company's properties, from eight to twelve wells each year for two years would have been drilled, and that this would have increased the value of the corporation's assets from $1,600,000.00 to $2,400,000.00, and this, in turn, would have resulted in the enhancement of the value of his stock.

█ In the first place, we do not think that the Commonwealth could reasonably have foreseen or anticipated that the corporation was depending on Davis to use his personal funds to finance it in the development of its oil properties, and that by reason thereof a levy on Davis' stock would have resulted in the inability of the company to develop its properties; or that some similar injury would flow from the wrongful suing out of the writ. It must be remembered that the corporation and its shareholders are to be treated as distinct legal entities. The

shareholders, having elected to conduct their business in a corporate form, thereby, in the language of Mr. Justice Holmes, "interposed a non-conductor" between themselves and those who deal with them in the corporate enterprise. Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 273, 52 L. ed. 481, 487, 28 Sup. Ct. Rep. 288. Davis was in nowise obligated to use his personal funds to finance the corporation, a separate and distinct legal entity, in the development of its properties. He had not contracted to do so, and his mere ownership of stock in the corporation did not, in law obligate him to do so. 18 C. J. S. 1147. Neither can it be said that there was a customary practice for stockholders to use their private funds to finance the corporation as to require the plaintiff to take notice thereof. Since Davis was in nowise obligated to use his personal funds to finance the corporation, and the plaintiff had no notice of any intention on his part to do so, the plaintiff could not reasonably have foreseen that its wrongful act in garnishing Davis' stock in the corporation would result in this, or some similar, injury to the corporation.

■ Moreover, Davis has not shown any damage for which he can recover by reason of the depreciation of the market value of his stock. As before stated, there is nothing in the record to indicate that he would have sold his stock on a higher market but for the writ of garnishment. The levy of the writ has not interferred with the right of the corporation to dispose of any of its assets on a profitable market. Presumably, it still has the same assets that it had before the writ was levied, and these assets are now as valuable as they ever were. There is nothing to show that its properties have suffered any physical damage, nor is there any showing that when the garnishment proceedings have been concluded the company will not be able to develop its properties as successfully as previously intended. Under these circumstances the corporation suffered no loss, and Davis, as a stockholder, has not been damaged.

In the case of Girard v. Moore, 86 Texas 675, 26 S. W. 945, this Court said:

"The garnishment of the shares in an incorporated or in a joint stock company operates as a restraint upon the owner's power of sale so long as they remain subject to the writ (Revised Statutes, article 191); but proof of the mere fact that they have declined in value during that time, without further proof that the holder could and would have sold them before

the depreciation took place, does not show a loss resulting from the operation of the process.

"We have held, that since a levy of a writ of attachment upon land does not interfere with the owner's possession and enjoyment of his property, it does not entitle him to recover damages for the wrongful use of the writ, unless he show some special damage, such as a loss resulting from his being deprived of an opportunity to make an advantageous disposition of the estate. Trawick v. Martin Brown Co., supra. Such a case is not distinguishable in principle from that suggested by the questions before us.

"The earning capacity of the stock is not affected by the garnishment, and the effect of the writ is not to depreciate its value. The rise or fall in the value of the shares of a stock company ordinarily depends upon the opinion of investors as to the value of its assets, the conduct of the business, and the probable success or failure of the enterprise; and it is not to be presumed that that opinion will be influenced by the garnishment of the stock of any particular shareholder. Therefore the decline in value of the shares is not a probable, if a possible, consequence of the garnishment; and no recovery can be had for the loss resulting from such depreciation, in the absence of evidence sufficient to show that but for the writ the loss would have been suffered."

Under the facts of this case and the above authority Davis was not entitled to recover the item of $550,000.00 on his cross-action for depreciation in value of his stock in the corporation.

Davis claimed damages for the loss of an oil and gas mining lease on a 1200-acre tract of land in Matagorda County, Texas. This lease contained a clause to the effect that if a certain well then being drilled on a nearby tract should be brought in as a producer, the lessee would begin an offset well within sixty days and drill the same to the same producing horizon, and that in the absence thereof the lease would lapse. At the time the writ was served the well on the nearby tract had come in as a producer and arrangements had been made with a driller to develop the 1200 acre tract in accordance with the terms of the lease. The driller was to be paid for each well upon its completion. He was depending largely on Davis to

412

raise the money to pay for the work. As a result of the filing of the suit and service of the writ the driller lost confidence in Davis' financial ability and declined to drill the well. Davis' stock was tied up by the writ, and he could not raise the money to pay cash for the work. He claimed that he was unable to get any one else to drill the well, and as a result it was not drilled and the lease was lost. The jury found that Davis thereby suffered damage in the sum of $1,000,000.00.

The lease in question was taken in the name of the Ohio Goodyear Securities Company, an Ohio corporation, in which Davis owned all of the stock. While the jury found that the lease "was taken in the name of said company solely for convenience and that the same was beneficially owned * * by Edgar B. Davis," there is no evidence in the record to support such finding. In this connection Davis testified that the lease cost $50,000.00. He further testified, in substance, as follows: "The lease was taken in the name of the company of which I owned all the stock, Ohio Goodyear," because "it was money that came to me through them that permitted me to buy the lease. Q. All right then, under what condition did you put that in the name of the Ohio Goodyear, with what condition was it put in the Ohio Goodyear? A. Why, I think it was unconditionally put in at that time. We were discussing at the time turning that lease over to the United North and South Development Company. Q. Did you have it subject to your disposition and control as to what was to become of it? A. I did as the owner of all the stock of the Ohio Goodyear and with the Board of Directors, who would recognize what I wanted to do. Q. Now then, as far as other people who were interested in the company, as officers, did you have—was there an understanding with you it was put in there until $50,000.00 was returned? A. No, sir, we had never come to the definite arrangement of what we would pay for that lease, but the discussion was if we paid them that $50,000.00 and give them what you call an override, so many barrels. Q. But you contemplated obtaining the lease and developing it through yourself or some other company? A. Yes, sir. Q. And you had not yet decided which to do? A. That is right. Q. And you owned one hundred per cent of the stock of the Ohio Goodyear? A. I do. Q. I will ask you, Mr. Davis, under the set-up you had with that lease, if you could dispose of it as you pleased? A. Yes, sir, I could have. Q. In other words, do you know of any contractual relation or otherwise of anybody having an interest to prevent

you doing anything you wanted to with that lease? A. No, sir." On cross examination he testified as follows: "Q. Now, when you state the $50,000.00 was paid for the twelve hundred acre lease, I take it the Ohio Goodyear paid that, is that it? A. Yes, sir, wait a minute, no, sir, I paid that out of money advanced whereby the Ohio Goodyear—Q. By the Ohio Goodyear to you? A. I think that is right. Q. In other words, that is the Ohio Goodyear money advanced to you? A. No, sir, it was Ohio Goodyear, it bought that direct."

The above evidence makes it clear that the lease was bought and paid for by the Ohio corporation; that it belonged to said corporation; and that Davis' right of control over the lease sprang solely from the fact that he was the sole owner of the stock of said corporation and could manage its affairs as he saw fit. The fact that Davis owned all of the capital stock of the corporation did not destroy the corporation as a separate entity, nor render him the legal owner of its property. 3 Hildebrand Texas Corporations, p. 354, Sec. 843; 14 C. J. 865; Paramount-Famous Lasky Corp. v. Stinnett (Tex. Civ. App.), 17 S. W. (2d) 125. Davis testified that the Ohio Goodyear Securities Company bought the lease "direct," and that it was put in the name of that company "unconditionally." It had cost the Ohio company $50,000.00, and he contemplated giving that company $50,000.00 and an additional overriding royalty for it. Under the above evidence we think it was clearly shown that the lease belonged to the Ohio corporation, and not to Davis. Since the lease belonged to the Ohio corporation, its loss, due to the lack of development, was a loss primarily to said corporation, and not to Davis; and Davis had no right of action therefor. He does not seek in this instance to recover for depreciation in the value of his stock in the Ohio corporation. His action was one for the loss of a lease which did not belong to him.

But if the evidence had shown that Davis had owned the lease the result would have been the same. As above stated, the lease stood in the name of the Ohio corporation. That corporation did not have a permit to do business in Texas, and there is no evidence in the record to indicate that the Commonwealth, or any of its representatives, including the Texas attorney who sued out the writ of garnishment, knew of the existence of the lease or was familiar with its terms, or knew that Davis owned it, or knew of the existence of the Ohio

corporation or that Davis owned any of the stock therein. Davis had been carrying on his oil operations through the United and South Development Company, and there was nothing to indicate that he was carrying on similar operations through the Ohio corporation. It does not appear that the Commonwealth or its attorney who sued out the writ had any knowledge of any fact that would put one on notice that Davis owned any lease in that vicinity, or that the lease contained the forfeiture clause, or that Davis had any connection with the Ohio corporation. A search of the indexes of Matagorda County would not have revealed that Davis owned any interest in the lease. We do not believe that the Commonwealth or its attorney could have been expected to forsee that the garnishment would cause Davis to lose a lease which appeared on the public records as the property of this foreign corporation, or that any similar injury would result therefrom.

■ Since under the undisputed evidence it could not have been reasonably foreseen that the suing out of the writ of garnishment would cause the loss of the lease, or some similar injury, it was not the proximate cause of the injuries sustained by reason of the loss of the lease.

We are of the opinion that there was no evidence, as a matter of law, to support the finding of the jury that the suing out of the writ of garnishment was the proximate cause of the loss of the lease.

Davis contends that, even though the loss of the 1200-acre lease could not have been reasonably foreseen as a probable result of the suing out of the writ of garnishment, and as a consequence was not the proximate result thereof, nevertheless the Commonwealth is liable, because the suing out of the writ actually caused the loss of the lease, and the jury found that the Commonwealth's Texas attorney, in suing out the writ, did so recklessly and in conscious disregard of Davis' rights. He contends that when a wrongful act is done maliciously or wantonly, the wrongdoer is responsible for all the consequences that actually result therefrom, even though they may be remote and not the proximate result thereof. He cites in support thereof the following authorities: St. Louis, S. W. Ry. Co. v. Alexander (Tex. Civ. App.), 141 S. W. 135; affirmed 106 Texas 518, 172 S. W. 709; Garrison v. Sun Printing & Publishing Assn., 207 N. Y. 1, 100 N. E. 430, 45 L. R. A. (N.S.) 766, Ann. Cas. 1914C 288. See also 25 C. J. S. 489.

■ Assuming, without deciding, the soundness of the doctrine so asserted, we do not think that it is applicable in this case, because there is no evidence nor finding by the jury that the Commonwealth, or its executive officers, knew that its Texas attorney was acting maliciously or wantonly in suing out the writ of garnishment. A principal is ordinarily liable for injuries proximately caused to third parties by the wanton or malicious acts of his agent, committed in the scope of his employment. International & G. N. Ry. Co. v. Anderson, 82 Texas 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Gulf, C. & S. F. Ry. Co. v. James, 73 Texas 12, 10 S. W. 744, 15 Am. St. Rep. 743; Magnolia Pet. Co. v. Guffey, 129 Texas 293, 102 S. W. (2d) 408; Aetna Cas. & Sur. Co. v. Love, 132 Texas 280, 121 S. W. (2d) 986; 3 C. J. S. 192. But where it is sought to impute the malice or wantonness of an agent to the principal for the purpose of imposing extraordinary consequences on him,—such as exemplary damages for the wrongful suing out of a writ of attachment,—a different rule applies. In such a case, in order to render the principal liable for exemplary damages because of the malice of his agent, the evidence must show that he had knowledge of and participated in the malice, or afterwards ratified and adopted or approved the malicious acts. Wallace & Co. v. Finberg, 46 Texas 35; Willis & Bro. v. McNeill, 57 Texas 465; Tynberg & Co. v. Cohen, 67 Texas 220, 2 S. W. 734; Gimbel v. Gomprecht (Tex. Civ. App.), 36 S. W. 781; Fleming v. Lon Morris College (Tex. Civ. App.), 85 S. W. (2d) 276 (writ refused); 5 Tex. Jur. 348. While we have found no authorities on the question, it would seem, for the same reason, that the principal should not be held liable for the extraordinary consequences such as remote damages, although caused by the malicious conduct of his agent,—unless he had knowledge of and participated in the malice, or afterwards, with such knowledge, ratified or approved the malicious acts. Nowhere in the record does there appear any evidence that the governing officials of the Commonwealth had knowledge of any facts that would render the issuance and service of the writ of garnishment willful or malicious.

■ The bond for the garnishment was signed on behalf of the Commonwealth by Hon. Charles F. Hurley, its Governor. After the litigation was begun, the authority of the Governor to bind the Commonwealth on the bond was challenged. The matter was submitted to the General Court, or Legislature, of Massachusetts, which passed a "Resolve" to meet this objec-

tion. This "Resolve" recites the facts about the institution of litigation and the signing of the bond by the Governor, and that the authority of the Governor to execute the bond had been questioned, and proceeds: "Resolved, that in order to remove any such debts, the action of said governor and the council in executing said bond and the institution of said suits by William H. Russell, Esquire, as attorney, are ratified and confirmed." We do not think that the Commonwealth, by adopting this "Resolve," thereby became liable for the malice of its agent in procuring the writ of garnishment. In accordance with established rules, there can be no ratification of the malicious act of an agent where the principal had no knowledge of the existence of the malice, or of facts and circumstances from which malice might be inferred. Gimbel v. Gomprecht (Tex. Civ. App.), 36 S. W. 781; Tynberg & Co. v. Cohen, 67 Texas 220, 2 S. W. 734; 5 Tex. Jur. 349. We hold, therefore, that there is no evidence of willfulness or malice on the part of the governing officials of the Commonwealth; and, consequently, that the Commonwealth cannot be held liable for any injuries to Davis not reasonably foreseeable at the time the garnishment was levied.

In the course of its opinion the Court of Civil Appeals made the following statement:

"In the instant case the impounding of the stock by garnishment did deprive appellee of its use, because our statute, Art. 4084, prohibits the sale or transfer of stock of a corporation impounded by garnishment, and provides that any sale or transfer of the stock is void. This is true even though the officer serving the writ does not in fact take possession of the stock, because the courts hold that under such a statute, the writ is still in force and effect, notwithstanding the writ has been quashed, and notwithstanding an appeal is taken on cost bond from the order quashing it, and although no supersedeas bond is filed. Mackenzie v. A. Englehard & Sons Co., 266 U. S. 131, 139, 45 Sup. Ct. 68, 69 L. ed. 205, 36 A. L. R. 416." 160 S. W. (2d) 543, 561.

The above statement was unnecessary to a decision of the question before the court; and since in the companion case of Commonwealth of Massachusetts v. United North and South Development Co., Garnishee, et al, 140 Texas 417, 168 S. W. (2d) 226, this day decided, we are affirming the judgment of the district court quashing the writ of garnishment, we need not here further discuss the question.

The judgment of the district court and Court of Civil Appeals in favor of the Commonwealth of Massachusetts against Davis on its tax judgment are affirmed. The judgment of the trial court and Court of Civil Appeals in favor of Davis on his cross action are reversed, and judgment here rendered denying any recovery thereon.

Opinion delivered December 16, 1942.

Rehearing overruled February 24, 1943.