AETNA CASUALTY AND SURETY
COMPANY, Appellant,

v.

Edward RAPOSA et ux., Appellees.

No. 17877.

Court of Civil Appeals of Texas,
Fort Worth.

Oct. 13, 1977.
Rehearing Denied Nov. 10, 1977.

Greenberg & Bach and Robert M. Greenberg, Dallas, for appellant.

Henry & Hatcher, Gainesville, Kelsey & Wood and Richard H. Kelsey, Denton, for appellees.

## OPINION

HUGHES, Justice.

The surety on a garnishment bond has appealed by writ of error from a judgment in a suit for wrongful pre-judgment garnishment on the grounds that plaintiffs did not plead and prove a cause of action and alternatively, that the elements of damages pleaded and proved are not proper in such an action.

We affirm in part; reverse and remand in part; and reverse and render in part.

On December 31, 1973, Edward Raposa and his wife, Carol, sued K. E. and Veronica Caspers doing business as K. E. Caspers Construction Company and appellant, Aetna Casualty and Surety Company, the surety on the garnishor's bond, seeking damages for an alleged wrongful garnishment. The defendants answered with a general denial, but neither appeared at trial. Aetna has petitioned for writ of error.

The Raposas' original petition for wrongful garnishment alleged, in part, the following: The Raposas and Caspers entered into a written contract on January 24, 1972, to build a lake cabin. The total contract price was $14,520.00. The Raposas then entered into an interim financing agreement with the First State Bank of Denton, which required the Raposas to purchase an insurance policy on the cabin. They purchased a policy from Republic Insurance Company of Dallas, with the loss-payable clause in favor of the bank. After Caspers had begun work, but before he had completed the cabin, the cabin was totally destroyed by fire. Thereafter Caspers sued the Raposas for an alleged debt of $12,521.99 on the cabin and filed an application for writ of garnishment against Republic in order to garnish the funds due and payable to the bank under the policy. Caspers executed a garnishment bond in the amount of $25,043.98, with Aetna as surety. The Raposas further alleged that they were not indebted to Caspers and that there was no basis in law or fact to sustain the writ of garnishment against Republic. As a result of the writ of garnishment, Republic was prevented from paying the insurance proceeds to the bank; the Raposas were unable to repay the bank loan; and interest continued to accumulate on the principal. They also alleged that interest rates on home construction loans rose during that period of delay. The Raposas initially sought a joint and several judgment of $7,132.75 for additional interest paid and increased home loan costs, plus $1,500.00 in attorneys' fees.

At trial the court permitted the Raposas to file a trial amendment in which they alleged that the defendants were jointly and severally liable for the following damages:

Interest on the detained funds, $1,296.00;
Additional interest paid on the interim commitment to the FIRST STATE BANK OF DENTON, $1,536.75;
Attorneys' fees in defending the primary suit, $1,000.00;
The differential in mortgage expense, $6,398.40;

The differential in construction costs, $20,480.00.

The amended pleadings thus sought a joint and several judgment of $30,771.15 against Aetna and Mr. and Mrs. Caspers.

The trial court's judgment recited that the defendants had been duly notified pursuant to local rules and were aware of the trial setting, that they nonetheless failed to appear either personally or by their attorney of record, and that the court heard testimony as to damages only. The elements of damages found by the court, as recited in its judgment, were those alleged in Raposa's trial amendment. Rather than rendering a joint and several judgment against all the defendants for $30,771.15 as sought by the Raposas, the court rendered judgment for the Raposas against Mr. and Mrs. Caspers and Aetna, jointly and severally, for $25,043.98 (which amount corresponds to the amount of the garnishment bond,) and against Mr. and Mrs. Caspers, jointly and severally, for $5,727.17.

The only testimony in the record is that of Edward Raposa. He testified that the suit for debt brought by Caspers against him and his wife had been adjudicated in their (the Raposas') favor and that the writ of garnishment was in fact issued in regard to the casualty insurance proceeds. As a result, $16,188.90 in casualty fire insurance proceeds was tied up from May 10, 1972, to September 7, 1973. (The remainder of Raposa's testimony concerning damages will be set forth below.)

■ For convenience we will first discuss Aetna's second point of error: that the trial court erred in rendering judgment "for the reason that [the Raposas'] pleadings failed to allege a cause of action for a wrongful garnishment."

In its brief Aetna now admits "[t]he fact that the debt made the basis of the garnishment was ruled not due" but argues that fact does not make the garnishment wrongful. Aetna's position is that the Raposas were required to "plead and prove that [the Raposas] not only had sufficient unexempt property to satisfy the debt claimed to be

due, but further, that the adversary had such knowledge of the existance [sic] of such property."

■ Aetna's reliance on *King v. Tom*, 352 S.W.2d 910 (Tex.Civ.App.—El Paso 1961, no writ) is misplaced in this regard. In that case the suit for balance due on a note had been adjudicated *against* the debtor, thus precluding the allegation made in this case that the garnishment was wrongful on the ground that the debt was not justly due.

A garnishment is wrongful if the allegations set forth in the affidavit as prescribed by statute are false. One of the grounds for the issuance of a writ of garnishment is that the debtor is justly indebted to the garnishor . . . . . Thus, the garnishor assumes the responsibility of proving that the debtor is indebted to him. Comment, 41 Texas L.Rev. 692, 705 (1963), citing *Barr v. Cardiff*, 32 Tex.Civ.App. 495, 75 S.W. 341 (1903, writ ref'd).

■ Aetna's first point of error (discussed out of order) is that "[t]he trial court erred in rendering judgment against Aetna . . . for the reason that [the Raposas] did not meet their burden of proof, and failed to prove a cause for wrongful garnishment." Aetna's objection to the judgment is based on the alleged failure of the trial court to hear evidence on the liability issues before rendering its judgment.

Aetna correctly cites *Frymire Engineering Co., Inc. v. Grantham*, 524 S.W.2d 680 (Tex.1975), *Tally v. Thorn*, 35 Tex. 727 (1872) for the proposition that the filing of a general denial requires the court to hear evidence before rendering judgment. But Aetna's position assumes that the trial court heard no testimony whatsoever establishing liability. It is true that the statement of facts reflects that the court announced it would hear testimony only with regard to damages. The judgment also recites that the court rendered judgment for the Raposas on the liability issues and proceeded to hear testimony in regard to damages.

But Raposa's testimony concerning damages also included testimony that this action for wrongful garnishment arose in connection with an action for an alleged debt owing on the cabin brought against him by Caspers and which was adjudicated in his (Raposa's) favor. (As previously pointed out, Aetna itself now admits that Caspers lost the suit for debt.)

We hold as a matter of law that this testimony established that the garnishment was wrongful. *Peerless Oil & Gas Co. v. Teas*, 138 S.W.2d 637 (Tex.Civ.App.—San Antonio 1940), *aff'd on other grounds*, 138 Tex. 301, 158 S.W.2d 758 (1942); *Barr v. Cardiff*, 32 Tex.Civ.App. 495, 75 S.W. 341 (1903, writ ref'd). Any error in the trial court's decision not to hear evidence on the liability issues was cured and was not such "as was reasonably calculated to cause [nor did it] probably . . . cause the rendition of an improper judgment in the case." Tex.R.Civ.P. 434.

Aetna's third point is that the trial court "erred in rendering judgment for the amount rendered in that the elements pleaded and proved are not proper damages to be awarded in a wrongful garnishment action." Aetna does not attack the sufficiency of the pleadings and proof offered as to the elements of damages, questioning only the propriety of awarding them in this action.

■ Damages may be recovered in a wrongful garnishment action for those injuries proximately caused by the wrongful act. "[P]roximate cause consists of two elements: (1) cause in fact, and (2) foreseeability. . . . Both elements must be present. . . . Cause in fact as an element of proximate cause means that the [wrongful] act . . . was a substantial factor in bringing about the injury and without which no harm would have been incurred. . . . " *Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977).

Foreseeableness or anticipation of injury is an essential element of proximate cause. The injury complained of must be the natural and probable consequence of the wrongful act—that is, it must be of such nature as would reasonably have been anticipated under the circumstances by a person of ordinary prudence. It is not necessary that it appear that the wrongdoer actually foresaw the precise course of the consequences of his wrongful act, but it must appear that he could or should reasonably have anticipated or foreseen that the injury complained of, or one of the same general character, would probably result from his wrongful act. *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 222 (1942), *cert. denied*, 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943).

With this test in mind we will discuss each item of damages recited by the trial court as the basis of its judgment.

### INTEREST ON THE FUNDS GARNISHED

■ The proper measure of damages in a wrongful garnishment action is the actual damages sustained. *Stevens v. Simmons*, 61 S.W.2d 122 (Tex.Civ.App.—El Paso 1933, no writ). In the absence of other facts authorizing a recovery for actual damages, the measure of damages in a wrongful garnishment action is the legal rate of interest on the money for the period of its wrongful detention. *Lightfoot v. Murphy*, 47 Tex.Civ.App. 112, 104 S.W. 511 (1907, no writ). Because of the other facts discussed below establishing actual damages in this case the award of $1,296.00 interest on the detained funds is an inadequate measure of the actual damages sustained. Yet to permit its recovery in addition to the items of damages actually sustained would be to permit a double recovery. The $1,296.00 interest award is therefore improper in this case and must be omitted from the trial court's judgment as an element of damages.

### ADDITIONAL INTEREST PAID ON THE INTERIM COMMITMENT TO BANK

■ Raposa gave the following testimony concerning additional interest paid on

the interim commitment to the bank: Raposa had obtained interim financing on the cabin from the bank and had paid the proceeds of the bank loan to Caspers. When the garnishment proceedings tied up the $16,188.90 in casualty fire insurance proceeds held by Republic, Republic was unable to pay the proceeds to the bank in accordance with the terms of the policy. Raposa was thus unable to meet his obligation to the bank on the interim loan because the insurance proceeds from the policy bought for that purpose were tied up by the garnishment. Not until the insurance proceeds were finally freed was he able to repay the bank loan. As a result of the delay in repaying the bank, he testified he had to pay the bank additional interest in the amount of $1,596.75, which amount was the differential in interest incurred between the time that the loan should and could have been paid had the garnishment proceeding not been instituted and the time the proceeds were made available to him.

Aetna argues that the additional interest could not be anticipated as a natural and probable result of suing out a writ of garnishment, citing *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216 (1942), *cert. denied*, 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943); *Reynolds v. Sandel*, 142 S.W.2d 527 (Tex.Civ.App.—El Paso 1940, no writ); and *Stafford v. Patterson & Nelson*, 184 S.W. 1095 (Tex.Civ.App. —Fort Worth 1916, no writ).

The cited cases are not controlling on the question before us. The *Stafford* case involved a claim for profits lost when a seller's bank account was garnished, leaving him unable to pay freight charges on a shipment as required by an unrelated sales contract. The *Reynolds* case also involved a claim for lost profits, but no evidence had been heard concerning damages. In *Commonwealth of Massachusetts v. Davis* the court held that the garnishor could not reasonably have anticipated that garnishment of Davis's stock would injure the corporation by preventing Davis from using it as collateral for a personal loan to be used to finance the corporation. The court noted that this was not a case in which a stock-

holder lost the benefit of a profitable sale of the stock because of the garnishment. The court also stated that the Commonwealth of Massachusetts could not reasonably have anticipated that the corporation was depending on Davis for financing because (1) under the law the corporation and its shareholders are treated as distinct entities, (2) Davis was not obligated to use his funds to finance the corporation, (3) it was not customary for stockholders to do so, and (4) the Commonwealth had no notice of Davis's plans for the use of the stock.

Although the record in this case is silent as to whether Caspers had actual knowledge of Raposa's loan from the bank, we think that in these circumstances a person of ordinary prudence would reasonably have anticipated that the garnishment of the proceeds of a casualty fire insurance policy purchased to cover fire losses occurring during the construction of the insured building would probably result in additional expenses of this kind. We hold that the additional interest paid on the interim commitment to the bank is a proper element of damages.

## DIFFERENTIAL IN MORTGAGE EXPENSE

█ Raposa testified he had a letter of commitment from a mortgage company which he had accepted as a take-out letter for the interim construction loan and that Decatur Savings and Loan was at all times prepared to honor its commitment until the period expired. Their commitment was for $17,000.00 at 7% per annum for twenty years. When Raposa attempted to rebuild the cabin after the insurance proceeds were finally freed, the interest rate on a commitment with the same terms and conditions had increased by September of 1973 to 9½% per annum. Raposa calculated the increased mortgage expense resulting from the delay at $6,398.40.

For the reasons discussed above in connection with the additional interest paid on the interim loan we hold that the additional mortgage expense resulting from the gar-

nishment was also reasonably foreseeable, and, hence, a proper element of damages.

### DIFFERENTIAL IN CONSTRUCTION COSTS

Raposa also testified that during the period the funds were subject to the garnishment construction costs spiraled and that the lowest estimate he received to replace the cabin was $35,000.00. The trial court found the differential in construction costs to be $20,480.00. This figure corresponds to the difference between the low replacement estimate of $35,000.00 received at some unspecified time after September 7, 1973, and the original $14,520.00 contract price of January 24, 1972. There is no evidence in the record, and the court made no finding as to what the replacement costs were on May 10, 1972, and September 7, 1973. Consequently, there is no evidence in the record on which to base a finding as to how much the construction costs increased during the period the funds were wrongfully detained, and hence, how much of the increase was in fact caused by the garnishment.

We hold that under the circumstances of this case the increased construction costs were also foreseeable. But because there is no proper finding by the court as to how much of the increase in construction costs was the result of the wrongful garnishment, we must reverse the trial court's judgment and remand the case to the trial court. The facts on which liability for the wrongful garnishment rests are not contested, however, and the question of the resulting increase in construction costs is separable without unfairness to the parties. Thus we remand the case pursuant to Tex.R. Civ.P. 434 solely to determine how much the construction costs increased during the period the funds were wrongfully detained. *Young v. Hicks*, 20 Tex.S.Ct.J. 376 (June 22, 1977). See also Pope, *"Try, Try, Again . . . ." A Proposal to Limit the Scope of New Trials in Texas*, 7 St. Mary's L.J. 1 (1975).

We need not apply the proximate cause test to the item of attorneys' fees because the attorney for Raposa in oral argument before this court conceded the impropriety of the $1,000.00 attorneys' fees as an item of damages in this case. This item must be omitted as a basis of recovery under the judgment.

Although Mr. and Mrs. Caspers, defendants below, did not appeal the joint and several judgment against them, they are the principals on the garnishment bond and Aetna's liabilities as surety on the bond are dependent on their liability. The Raposas are entitled to a joint and several judgment for damages actually sustained against Aetna and Mr. and Mrs. Caspers up to the amount of the garnishment bond and to a joint and several judgment against Mr. and Mrs. Caspers for any damages in excess of the bond amount. Because the rights of the parties are interdependent, we must treat the judgment as an entirety. *Hamilton v. Prescott*, 73 Tex. 565, 11 S.W. 548 (1889). Thus we must also reverse the judgment as to Mr. and Mrs. Caspers. *Home Savings Ass'n. v. Southern Union Gas Co.*, 486 S.W.2d 386 (Tex.Civ.App.—El Paso 1972, writ ref'd n. r. e.).

In summary, the trial court's judgment found as the Raposas' damages:

(1) Interest on the detained funds, $1,296.00;

(2) Additional interest paid on the interim commitment to the FIRST STATE BANK OF DENTON, $1,536.75;

(3) The differential in mortgage expense, $6,398.40;

(4) The differential in construction costs, $20,480.00; and

(5) Attorneys' fees, $1,000.00.

We affirm the judgment of the trial court in all respects except for the following: We reverse that part of the judgment finding damages for interest on detained funds of $1,296.00 and attorneys' fees of $1,000.00 and render judgment that the Raposas take nothing as to these two items. That part of the judgment finding damages for the differential in construction costs of $20,480.00 is reversed and remanded to the trial court for partial new trial.