**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Alliance Savings & Loan Association, Plaintiff,**

**v.**

**James HOWSE, et al., Defendants, and Third Party Plaintiffs,**

**Justin Rose, et al., Third Party Defendants.**

**Civ. A. No. H–89–1908.**

United States District Court, S.D. Texas, Houston Division.

April 13, 1992.

Lisa H. Pennington, Hurlie H. Collier, James C. Winton, Baker & Hostetler, Houston, Tex., for plaintiff.

Abbe David Lowell, Brand & Lowell, Washington, D.C., Michael P. Von Blon, Austin, Tex., Harriet O'Neill, Houston, Tex., for defendant James Howse, Everett Mattson, Marian Rosen, Arnold Rudolph, Irving Weiner, Gertrude Yang and Merilee Aron.

Abbe David Lowell, Washington, D.C., Michael P. Von Blon, Austin, Tex., Jack J. Rawitscher, Houston, Tex., for defendant Leonard Cersonsky.

Robert A. Hall, Woodard Hall & Primm, Houston, Tex., for defendant Alan Gaylor.

Sidney Ravkind, Mandell & Wright, Houston, Tex., for defendant Walter Wright.

Stephen E. McConnico, Scott Douglass & Luton, Austin, Tex., for defendant Baker Brown Sharman.

Esther L. Hajdar, Asst. Atty. Gen., Austin, Tex., for cross-defendant L.L. Bowman.

Rufus Wallingford, Fulbright & Jaworski, Houston, Tex., for third-party defendant Thomas E. Lee.

## MEMORANDUM

HARMON, District Judge.

The FDIC brought this action on behalf of Alliance Savings seeking recovery from directors and officers of the failed institution under several causes of action stemming from their alleged malfeasance. Pending before the Court are the following motions:

(1) Motion to Dismiss Counterclaims (Instrument No. 108) filed by the FDIC;

(2) Motion to Dismiss Counterclaims arising in Tort (Instrument No. 110) filed by the FDIC;

(3) Motion to Dismiss Third Party Claims (Instrument No. 113) filed by J. Patrick Millinor;

(4) Motion to Dismiss Third Party Claims (Instrument No. 114) filed by J. Gordon Zuber;

(5) Motion to Dismiss Cross–Claims (Instrument No. 117) filed by Baker, Brown, Sharman & Parker;

(6) Motion to Dismiss Third Party Claims (Instrument No. 121) filed by John Dunn;

(7) Joint Motion to Consolidate Responses to Third Party Motions to Dismiss (Instrument No. 122) filed by Gertrude Yang, et al ("Director Defendants");

(8) Motion to Dismiss Third Party Cross–Claims (Instrument No. 123) filed by Baker, Brown, Sharman & Parker;

(9) Motion to Dismiss Third Party Complaint (Instrument No. 145) filed by Third Party Defendants Foreman & Dyess, et al;

(10) Motion to Dismiss Third Party Complaint (Instrument No. 146) filed by Third Party Defendants KPMG Peat Marwick;

(11) Motion to Extend Time for Filing Response to Third Party Motions (Instrument No. 151) filed by Gertrude Yang, et al;

(12) Motion to Dismiss Third Party Cross–Claims (Instrument No. 157) filed by Baker, Brown, Sharman & Parker;

(13) Motion to Set Time for Filing Consolidate Responses to Third Party Motions to Dismiss (Instrument No. 187) filed by Gertrude Yang, et al;

(14) Motion to Dismiss Third Party Complaint (Instrument No. 206) filed by Michael Copeland and Jack Sorensen;

(15) Motion to Dismiss Amended Third Party Claims (Instrument No. 214) and for Sanctions, filed by John Dunn;

(16) Motion to Dismiss Amended Third Party Claims (Instrument No. 217) filed by Third–Party Defendants L.L. Bowman and Kenton Fickes;

(17) Motion for Summary Judgment (Instrument No. 222) filed by Justin Rose;

(18) Motion to Dismiss Amended Third Party Complaint or in the Alternative Motion to Strike (Instrument No. 231) filed by Third Party Defendant KPMG Peat Marwick;

(19) Motion for Protective Order (Instrument No. 235) filed by Justin Rose;

(20) Motion to Dismiss Amended Third Party Claims or in the Alternative Motion to Strike (Instrument No. 237) filed by J. Patrick Millinor;

(21) Motion to Lift Stay (Instrument No. 247) filed by Walter Wright;

(22) Motion to Dismiss Amended Third Party Complaint or in the Alternative Motion to Strike (Instrument No. 252) filed by Third Party Defendants Jack Elias, et al;

(23) Motion to Dismiss the FDIC's Third Amended Complaint (Instrument No. 266) filed by Gertrude Yang, et al;

(24) Motion to Quash Summons (Instrument No. 276) filed by RCM Government Securities, Inc.;

Having considered the motions, the responses and the applicable law this Court is of the opinion that the Plaintiff's Motions to Dismiss the Director Defendants' Counterclaims should be granted, the Director Defendants' Motion to Dismiss should be denied, and the Motions to Dismiss the Director Defendants' Third–Party Claims and Cross–Claims should be granted.[1] As a result of these rulings the other motions now before the court are moot.

## I. STATEMENT OF FACTS

In the fall of 1985, regulatory officials rendered a report that criticized the financial health of Alliance. On October 30, 1985, the Board of Directors, defendants ("Director Defendants") in this action, signed an agreement that provided that "[d]uring the period of supervision, the association, its directors, officers, employees and shareholders shall act in accordance with the instructions and directions as may be given by the Savings & Loan Commissioner of Texas ..." Director Defendants Counterclaim Ex. 1, *amended*, August 31, 1990. On November 10, 1985, Alliance entered into a Consent Agreement with the FSLIC. In that agreement the Association acknowledged that the financial situation of the Association "require[s] extraordinary action" and that "grounds exist or will exist for the appointment of a conservator" and that the "Association shall, at the direction of the FSLIC, take all corporate actions necessary to effect a plan ...

---

**1.** The Third–Party Defendants' motions to dismiss will be considered together in the interest of judicial economy as those motions present the same issues.

approved by the FSLIC, and/or shall at the direction of the FSLIC, provide for the management of its day-to-day operations in accordance with the Management Services Agreement approved by the FSLIC ..." Director Defendants Counterclaim Ex. 2, *amended*, August 31, 1990.

The FSLIC commenced this action against the Director Defendants for self dealing and the use of flawed business practices. The law firm of Baker, Brown, Sharman & Parker was also named as a defendant in this action for its failure to exercise due care and for legal malpractice. The FDIC–Corporate succeeded the FSLIC–Corporate as the plaintiff in this lawsuit.

The Director Defendants have counterclaimed for breach of contract, misrepresentation, negligence, and indemnification for attorneys fees.

The Director Defendants' claim for breach of contract is premised on the allegation that Ken Fickes, a state banking official, failed to perform his responsibilities under the agreement in that he failed to formulate a business plan. The agreement, however, never actually placed a burden on the FSLIC to come up with a plan; rather it was "authorized to negotiate a plan ..." *Id.* Defendants claim for misrepresentation rests on the same facts, namely that the FDIC failed to assist Alliance in formulating a business plan in that the supervisor repeatedly failed to provide guidance. The claim for negligence is no different from that for contract and misrepresentation. Defendants allege that the FDIC failed to perform its duty with care. The Defendants ask for attorneys fees if they succeed in establishing that they are not guilty of negligence or that they failed to perform a duty required under law.

Plaintiff's first defense to the counterclaim is that this court lacks jurisdiction over the counterclaim for breach of contract. Moreover, plaintiff asserts that it is not the proper party to the counterclaim and thus the counterclaim should be dismissed. Additionally, plaintiff contends that the Defendants do not have standing to sue under the contract as the contract was executed with Alliance and not the individual board members.

Director Defendants bring their counterclaims sounding in tort and contract, but the facts remain the same with regard to both claims.

The preliminary issue to be addressed is whether the FDIC is the proper party to the Director Defendants' counterclaim. Next there will be a discussion of whether the Director Defendants have standing to assert their claims under contract and tort. The discussion will then move to a consideration of whether the counterclaims are properly claims for recoupment arising out of the same transaction or occurrence. Finally, there will be a determination of whether plaintiff, if it owed any duty to the defendants at all, owed a contractual duty or one arising in tort. Each of these issues is answered in the negative, and each issue represents an independent basis for dismissal. Although each issue is dispositive, all rationales will be discussed.

## II. DISCUSSION

### A. Standard of Review

#### 1. Motion to dismiss under Rule 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides that a motion to "dismiss for failure to state a claim upon which relief can be granted" may be proffered to dismiss a claim. When a district court reviews the sufficiency of a complaint, before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Id.* In considering a motion to dismiss under Rule 12(b)(6), the District Court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint. *LaPorte Constr. Co. v. Bayshore Nat'l Bank,* 805 F.2d 1254, 1255 (5th Cir.1986); *Windor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.), *cert. denied,* 469

**1560**

U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Dismissal of a claim is improper "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Kaiser Aluminum & Chem Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1984).

■ Therefore, in challenging the sufficiency of the complaint under rule 12(b)(6), the defendant bears the burden of proving that under no interpretation of the facts set forth in the complaint can the plaintiffs succeed. *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102.

**B. The Applicable Law**

*1. FDIC's Motion to Dismiss Counterclaims*

i. *Proper Party*

■ At the time the events giving rise to the counterclaims occurred, the Federal Home Loan Bank Board ("FHLBB") was the regulatory agency responsible for supervising federally insured savings institutions. The FHLBB was a division within the FSLIC. 12 U.S.C. §§ 1464, 1725(a), 1726, 1729(c). Subsequent to the events at issue, Congress enacted comprehensive changes to the statutory scheme concerning thrift regulation by means of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101–73, 103 Stat. 183. FIRREA abolished the FHLBB and the Federal Savings and Loan Insurance corporation (FSLIC), two of the agencies at issue here, and repealed the statutory provisions governing those agencies' conduct. §§ 401, 407, 103 Stat. 354–357, 363. At the same time, Congress granted the Federal Deposit Insurance Corporation ("FDIC") discretionary enforcement authority similar to that possessed by the antecedent agencies.

§§ 201, 301, 103 Stat. 187–88, 277–343; *see U.S. v. Gaubert,* — U.S. —, — n. 1, 111 S.Ct. 1267, 1271 n. 1, 113 L.Ed.2d 335 (1991).

The FDIC then assumed the receivership function of administering the assets and liabilities of each individual receivership, as the appropriate successor of the FSLIC. *See generally FDIC v. Gillard,* 740 F.Supp. 427 (N.D.Tex.1990). The FDIC–Receiver is the proper successor in interest of the FSLIC–Receiver, who is the proper party to the Director Defendants' (hereinafter "Director Defendants" or "defendants") counterclaims. The FDIC–Corporate is the successor in interest of the FSLIC–Corporate who initially brought this lawsuit.[2]

■ Although the FDIC may simultaneously act in both capacities, *FDIC v. Godshall,* 558 F.2d 220, 223 (4th Cir.1977), a claim based on the FDIC's conduct in one capacity may not be asserted against the FDIC acting in a totally different capacity. *See generally FDIC v. Eckert Seamans Cherin & Mellott,* 754 F.Supp. 22, 25 (E.D.N.Y.1990) (citing *In re F & T Contractors, Inc.,* 718 F.2d 171 (6th Cir.1983) (ruling that a claim against FDIC corporate may not be brought against the FDIC receiver). The Fifth Circuit has also noted the distinction between the FSLIC's actions as "receiver" and its actions as "insurer." *See Godwin v. FSLIC,* 806 F.2d 1290, 1291 n. 1 (5th Cir.1987); *Lambert v. FSLIC,* 871 F.2d 30, 32 (5th Cir.1989) (per curiam); *cf. FDIC v. Condit,* 861 F.2d 853, 882 (5th Cir.1988).

■■ Defendants assert that the counterclaims they now pursue stemmed from actions undertaken "between *the current plaintiff* and *the current defendant[s].*" Def.s' Resp. to Pl.'s Mot. at 11 n. 4 (emphasis original). This allegation is totally baseless. The consent agreement that is the basis for defendants tort and contract counterclaims was entered into by the FSLIC in its regulatory receivership capaci-

---

**2.** On January 22, 1990 (instrument # 47), the Court substituted in the FDIC–Corporate as the plaintiff in this action.

ty, not the FSLIC in its corporate capacity.[3] *See FDIC v. Berry*, 659 F.Supp. 1475 (E.D.Tenn.1987); *FDIC v. Baker*, 739 F.Supp. 1401, 1407 (C.D.Cal.1990). The FDIC–Corporate as successor in interest to the FSLIC–Corporate is not the proper party to Defendants' counterclaims and therefore they are properly dismissed. When the FDIC in its corporate capacity purchases assets from the FDIC as receiver, the FDIC corporate is not deemed a successor in interest to the failed bank, nor does it assume the liabilities of receivership. *See FDIC v. Andolshek*, 714 F.Supp. 1535, 1545 (W.D.Mich.1989) (citing *Batsakis v. FDIC*, 670 F.Supp. 749, 752–53 (W.D.Mich.1987); *FDIC v. Vestring*, 620 F.Supp. 1271, 1274 (D.Kan.1985); *FDIC v. First Mortgage Investors*, 485 F.Supp. 445, 452 (E.D.Wis. 1980)). The FDIC–Corporate cannot be held liable for any contracts entered into, or fraud perpetrated by, agents of the bank. *Id.* Any claims arising from the actions of the failed bank and its agents are enforceable only against the FDIC–Receiver. *Id.; FDIC v. Condit*, 861 F.2d 853 (5th Cir.1988); *Batsakis*, 670 F.Supp. at 753; *FDIC v. Vogel*, 437 F.Supp. 660, 665 (E.D.Wis.1977). Analogous application of that rule indicates that Defendants' counterclaims, asserted against Plaintiff FDIC–Corporate, for actions taken by FSLIC in its regulatory capacity, whose successor remains FDIC–Receiver, must be dismissed for failure to state a claim. *See FDIC v. Andolshek*, 714 F.Supp. at 1545; *see generally FDIC v. Coble*, 720 F.Supp. 748, 750 (E.D.Mo.1989) (affirmative defenses of contributory negligence and failure to mitigate held to be legally insufficient as the FDIC–Corporate was not involved with bank operations until it was declared insolvent).

#### ii. *Standing*

■ Defendants counterclaim for recovery in contract and tort. The "contract" they claim was breached was in actuality a consent agreement entered into between FSLIC in its regulatory capacity and Alliance Savings and Loan Association; the agreement was not entered into, as Defendants erroneously suggest, between the Defendants and the Plaintiff. Defendants also seek recovery for the alleged tortious acts of the regulators that caused a diminution in the value of their holdings; Defendants do not have standing to assert this ground of recovery inasmuch as it belongs to the FDIC.

■ The directors are suing in their individual capacities, and do not sue derivatively in the name of the corporation. This court must look to Texas law to determine if counterclaimants have standing to bring their actions individually, inasmuch as state law determines whether shareholders may maintain a nonderivative action. *Crocker v. Federal Deposit Insurance Corp.*, 826 F.2d 347 (5th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988).

■ Texas adheres to the general rule that a shareholder does not have a direct right against a director who has mismanaged the affairs of the corporation. In other words, a shareholder's right of action is derivative. *Gaubert v. U.S.*, 885 F.2d 1284, 1291 (5th Cir.1989), *rev'd on other grounds*, —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Leach v. Federal Deposit Insurance Corp.*, 860 F.2d 1266, 1274 (5th Cir.1988).

■ In determining whether an individual may bring a nonderivative action a court must look to the "nature of the wrong," not the existence of the injury. *Schoellkopf v. Pledger*, 739 S.W.2d 914, 919 (Tex.App.—Dallas 1987), *rev'd on other grounds*, 762 S.W.2d 145 (Tex.1988). That determination turns on whether all shareholders are "wounded," or just one person has been hurt by the misconduct. The law treats the former as harm to the corporate body, and the latter as harm to the individual. *Leach*, 860 F.2d at 1269.

---

**3.** Moreover, as will be discussed below, Defendants have no standing to assert a claim for breach of contract.

 As a matter of law, a cause of action for injury to the property of a corporation or for destruction of its business is vested in the corporation, not a shareholder, even though the harm may result in loss of earnings to the shareholder. A corporate shareholder has no individual cause of action for personal damages caused solely by wrong done to the corporation. *Faour v. Faour*, 789 S.W.2d 620, 622 (Tex.App.— Texarkana 1990, n.w.h.) (citing to *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216 (1942), *cert. denied*, 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943)). Only a corporation, not its shareholders, can complain of injuries sustained by a corporation. *United States v. Palmer*, 578 F.2d 144 (5th Cir.1978).

 A suit for the depreciation of share value must be brought by the corporation. *Commonwealth*, 140 Tex. at 401, 168 ·S.W.2d 216. As a result, it is the corporation that receives any recovery in a successful action. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). An individual shareholder *"has no separate and independent right of action for wrongs to the corporation which merely result in depreciation in the value of [his] stock."* *Faour*, 789 S.W.2d at 622 (emphasis supplied); *Commonwealth of Massachusetts v. Davis*, 168 S.W.2d at 218.

 Yet, a shareholder may still bring suit if a director violates a duty arising from a contract or representation owing directly to him. *Faour*, 789 S.W.2d at 622 (citing to *Stinnett v. Paramount–Famous Lasky Corporation*, 37 S.W.2d 145 (Tex. Com'n App.1931, holding approved)). In such a case, a shareholder may sue in a nonderivative action regardless of whether the corporation also brings suit. *Faour*, 789 S.W.2d at 662.

 An independent right does arise when an individual brings suit for misrepresentation, yet, a showing that a duty was owed to him or her personally is required. Normally, a corporate officer owes a fiduciary duty to the shareholders collectively, *i.e.*, the corporation, but he does not occupy a fiduciary relationship with the *individual* shareholder, unless some contract of special relationship exists between them in addition to the corporation relationship. *Faour v. Faour*, 789 S.W.2d at 621–622; *Kaspar v. Thorne*, 755 S.W.2d 151 (Tex. App.—Dallas 1988, no writ).

Other than Defendant's conclusory allegations, Defendants have failed to show that a duty, arising either in contract or tort, owed directly to them individually, was breached.

 The consent agreement which Defendants argue placed a duty on the FSLIC was not entered into by the directors but by Alliance itself.[4] The duty of adequate performance, if any was owed by the regulatory officials, was owed not to the directors or directly to Alliance, but to the insurance fund. *FDIC v. Burdette*, 696 F.Supp. 1183, 1189–90 (E.D.Tenn.1988). Defendants' counterclaims must fail for lack of standing.[5]

### iii. *Recoupment*

 Recoupment allows a "defendant to reduce the amount of plaintiff's claim by asserting a claim against the plaintiff *which arose out of the same transaction* to arrive at a just and proper liability on the plaintiff's claim." *In re*

---

**4.** The Defendants allude to, but do not elaborate on, the contention that they are third-party beneficiaries to the consent agreement, and as a result, have standing to sue. Their claim can only survive "if there is a contract or other liability of which the stockholder *personally* is the beneficiary, the cause of action arises to him as with any other cause of action he may have under the same circumstances." *Gaubert v. U.S.*, 885 F.2d at 1291–92 (citing *Cullum v. General Motors Acceptance Corp.*, 115 S.W.2d 1196, 1201 (Tex.Civ.App.—Amarillo, 1938, no writ) (emphasis supplied). In the instant action the

Defendants have failed to support there allegation that the consent agreement was entered into for their benefit.

**5.** Defendants do not allege that they sought to bring a derivative action in the name of Alliance. The pleadings do not reveal any request by Defendants that the FSLIC bring suit on their behalf. Indeed, even if futile, the demand must be made. *See Gaubert v. U.S.*, 885 F.2d at 1290 n. 6.

*Holford,* 896 F.2d 176, 178 (5th Cir.1990) (per curiam) (emphasis original). Recoupment is a defense that goes to the foundation of the plaintiff's claim by deducting from plaintiff's recovery all just allowances or demands accruing to the defendant with respect to the same contract or transaction; as a purely defensive procedure it is available to defendants so long as plaintiff's claim survives, even though affirmative action by the defendant may be barred by limitations. *Distribution Services, Ltd. v. Eddie Parker Interests, Inc.,* 897 F.2d 811 (5th Cir.1990). The mere fact that "the same two parties are involved in the claims to be offset, and that a similar subject matter gave rise to both claims does not mean that the two arose from the 'same transaction' for purposes of the doctrine of recoupment." *In re Davidovich,* 901 F.2d 1533, 1538 (10th Cir.1990) (per curiam) (bankruptcy action).

■■■ The FDIC–Corporate's suit alleges that the Directors and Officers breached certain contractual and fiduciary duties to Alliance and, among other things, engaged in self-dealing between 1983 and 1985. Specifically, the Directors employed flawed business practices in connection with Alliance's association in several real estate development ventures. The Directors, on the other hand, assert a counterclaim for negligence and breach of contract based on the alleged failure of the government to assist Alliance in its day-to-day operations, leading to Alliance's insolvency. These claims do not arise out of the same transaction or occurrence. Defendants' counterclaims do not sound in recoupment. *See FSLIC v. Burdette,* 696 F.Supp. 1183, 1187 (E.D.Tenn.1988); *FDIC v. Manatt,* 723 F.Supp. 99, 103–04 (E.D.Ark.1989); *see also In re McConnell,* 934 F.2d 662, 667 (5th Cir.1991) (court upheld bankruptcy court finding that a contract did not arise out of same transaction as the alleged fraud and were thus unrelated).

#### iv. *Duty*

■■■ The law is clear that the FSLIC, or its successor the FDIC, owes no duties that could form the basis of a negligence action.

The regulatory activities of these governmental agencies are subject only to the singular duty owed to the insurance fund; the agencies owe a duty to neither the institution itself nor its agents. *FDIC v. Baker,* 739 F.Supp. 1401, 1404–07 (C.D.Cal 1990); *FDIC v. Burdette,* 696 F.Supp. at 1189; *Harmsen v. Smith,* 586 F.2d 156, 157–58 (9th Cir.1978); *FDIC v. Demspter,* 637 F.Supp. 362, 366–67 (E.D.Tenn.1986). To imply that the Directors may be the beneficiary of that duty runs contrary to public policy. *FSLIC v. Roy,* No. JFM–8–1227, 1988 WL 96570 (D.Md. June 28, 1988).

Moreover, the defendants' counterclaims for breach of contract, if the consent agreement imposed an obligation on the governmental agency at all, should be dismissed. As mentioned above, the Director Defendants were not parties to the agreement. Def. Yang's First Counterclaim Ex. 2. *Republic National Bank v. National Bankers Life Ins. Co.,* 427 S.W.2d 76 (Tex.Civ. App.—Dallas 1968, no writ).

#### 2. *The Law Firms' Motions to Dismiss Third–Party and Cross–Claim Actions*

In addition to the jurisdictional reasons for dismissal of the third-party claims against the law firms of Baker, Brown, Sharman & Parker ("Baker Brown") and Foreman & Dyess, which will be discussed below, there exists an independent substantive reason for dismissal of the director defendants' crossclaims and the third-party claims of others.

■■■ Texas follows the traditional view that an "attorney owes no duty to third party non-clients." *Bell v. Manning,* 613 S.W.2d 335, 338 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.). Texas courts have continued to resist the adoption of relaxed privity requirements; and have refused, in most situations, to hold attorneys liable to third persons finding "that an attorney owes no duty to a third party in the absence of privity of contract." *First Municipal Leasing Corp. v. Blankenship, Potts, Aikman, Hagin & Stewart,* 648 S.W.2d 410, 412–13 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). An attorney owes no duty to

a third party "even under circumstances where the attorney renders an opinion to his client on which he knows a third party will rely." *Marshall v. Quinn–L Equities, Inc.*, 704 F.Supp. 1384, 1394–95 (N.D.Tex. 1988). Therefore, an attorney is not ordinarily liable to a third party for damages resulting from performance of professional services. *Bryan & Amidei v. Law*, 435 S.W.2d 587, 593 (Tex.Civ.App.—Fort Worth 1968, no writ). The Director Defendants who bring third party actions and cross-claims against Baker, Brown and Foreman & Dyess have failed to show that they have contracted with those law firms. *Berry v. Dodson, Nunley & Taylor*, 717 S.W.2d 716, 719 (Tex.App.—San Antonio 1986, writ dism'd by agr). In the absence of a showing of privity of contract or some special relationship, their actions may not be maintained. *Republic National Bank v. National Bankers Life Ins. Co.*, 427 S.W.2d 76 (Tex.Civ.App.—Dallas 1968, no writ).

### 3. Pendant Party Jurisdiction

The Third–Party Plaintiffs,[6] James Howse, Leonard Cersonsky, Alan Gaylor, Everett Mattson, Marian Rosen, Arnold Rudolph, Merilee Aron Weiner, Independent Executrix of the Estate of Irving Weiner, and Gertude Yang brought third-party actions, without leave of court, against Justin Rose, John Dunn, RCM Government Securities, Inc. ("RCM"), bank regulators Kenton Fickes and Lee Bowman III, the accounting firm of Klyneld, Peat, Marwick and Goerdeler ("Peat Marwick"), J. Patrick Millinor, the law firm of Foreman & Dyess and its former partners Hartford H. Prewett, Leonard B. Rosenburg, Thomas E. Lee, Wayne G. Dodson, Joseph R. Pulaski, John B. Scofield, J. Currie Bechtol, William D. Hoops, P.C., James E. Babcock, James W. Newman, Jr., Randal E. Evens, L. Todd Gremillion, B.J. Walter, Jr., P.C., Donald W. Brodsky, James E. Doyle, David G. Dunlap, Darrel E. Reed, Jr., George R. Nelson, P.C., Darold Maxwell, Robert H. Walls, J. Gordon Zuber, David Lewis, Michael Copeland, and Jack Sorenson. The Director Defendants as not-

ed above also brought a cross-claim against Baker Brown. Several of the third-party defendants have filed motions to dismiss the amended third-party complaint. Additionally, several of the third-party defendants, brought cross-claims against the other third-party defendants who then subsequently filed motions to dismiss.

The Directors' third-party complaint asserts that "if the third-party plaintiffs are found liable to the FDIC for losses resulting from loan practices and administration at Alliance, they are entitled to [contribution and/or indemnification] from [the third party defendants] in an amount to be determined at trial." Director Def. Amended Third–Party Compl.

The motions to dismiss the third-party claims and the third party cross-claims may be considered together since they involve the same issue of supplemental jurisdiction, previously known as ancillary and pendent jurisdiction.

### a. The Applicable Law

#### i. *Supplemental Jurisdiction*

Congress enacted the Judicial Improvements Act of 1990 in order to, among other things, fill jurisdictional gaps created by the United States Supreme Court's decision in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). *Finley* invalidated the application of pendant party jurisdiction. It noted that "with respect to the addition of parties, as opposed to the addition of claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." *Finley v. United States*, 490 U.S. at 549, 109 S.Ct. at 2007. Congress through 28 U.S.C. § 1367 codified and restored supplemental jurisdiction to essentially that which existed before *Finley*. *See* C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3567.3 at 35 (Supp.1991).

Supplemental jurisdiction, as it is now called, may now be extended over all claims that are so related to the claims in the main controversy that they form part of the

---

**6.** The Third–Party Plaintiff's include most of the parties that constitute the Director Defendants.

same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a); *see United Mine Workers v. Gibbs*, 383 U.S..715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Section 1367 took effect on December 1, 1990,[7] and is only applicable to actions commenced on or after that date. Pub.L. No. 101–650 § 310(c); *Loeber v. Bay Tankers, Inc.*, 924 F.2d 1340, 1345 n. 3 (5th Cir.1991) ("Because the instant action commenced before the enactment of the Judicial Improvements Act on December 1, 1990 that act does not apply to the instant case."); *In re Shell Oil*, 932 F.2d 1518, 1521 n. 7 (5th Cir.1991) (ancillary jurisdiction) ("we note that under recently enacted legislation 'supplemental jurisdiction' is to be used for all civil cases commenced on or after December 1, 1990."). This Court must now address the preliminary issue of whether the effective date of § 1367 bars application of its jurisdictional dictates.

The underlying action was commenced on June 1, 1989, long before the effective date of § 1367. The Director Defendants' third-party complaint[8] was filed on August 31, 1990, and third-party defendants Copeland's and Sorenson's counterclaims and crossclaims were filed on September 24, 1990, and October 24, 1990, respectively. It is clear that these actions were commenced before the effective date of § 1367; as a result § 1367 does not apply to these third-party action. Consequently, this court will undertake an analysis of pendant party jurisdiction under *Finley*.[9]

### b. Pendant Party Jurisdiction under *Finley* [10]

■ Applying *Finley* this Court finds that there is no independent basis of federal jurisdiction over the state law causes of action brought by the Director Defendants against third parties and the various third parties against others. These third-party claims and cross-claims do not give rise to federal question jurisdiction.[11] *See Eagle Properties, Ltd v. Scharbauer*, 807 S.W.2d 714, 718–21 (Tex.1990) (discussing pendant-party jurisdiction in the federal courts to resolve an issue of *res judicata* and collateral estoppel). A federal court may decide state law claims brought by third-party plaintiffs only when those claims fall within the court's ancillary or pendent-party jurisdiction.

■ Ancillary jurisdiction generally involves claims asserted defensively, i.e., "claims by a defending party hailed into court against his will," or by a party

---

**7.** *See* Judicial Improvements Act of 1990, Pub.L. No. 101–650, Title III, § 310(c), 104 Stat. 5089, 5113. *See* D. Siegal, *Practical Commentary*, "The 1990 Adoption of § 1367, Codifying 'Supplemental' Jurisdiction," following text of 28 U.S.C.A. § 1367 (West Supp.1991).

**8.** To avoid undue hardships to defendants, other courts have viewed a third-party claim as an independent "action" for purposes of § 1367's effective date. *In re Joint E. & So. Dist. Asbestos Litigation*, 769 F.Supp. 85, 87 (E. & S.D.N.Y. 1991).

**9.** The third-party plaintiffs now seek to amend their third-party complaint; that act does not change the fact that the action was commenced before the effective date of 28 U.S.C. § 1367.

**10.** This Court will use the term "pendant party" jurisdiction instead of the term "supplemental" jurisdiction as this Court has. determined that for the purposes of this discussion it must follow the *Finley* rubric.

**11.** The Director Defendants brought their third-party claims asserting this Court's jurisdiction under statutory interpleader. 28 U.S.C. § 1335. Many courts have held these interpleader provisions are remedial in character and should be construed liberally. 7 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1704 (1986 & Supp.1991) (citing *In the Matter of Bohart*, 743 F.2d 313, 324 (5th Cir.1984)). "The primary test for determining the propriety of interpleading the adverse claimants ... [is] whether the state holder legitimately fears multiple vexation directed at a single fund." *Id.* Additionally, interpleader requires a stake, fund or other identifiable property. *Id.* The Director Defendants use of defensive interpleader is not appropriate in this action since they are neither stakeholders nor are they exposed to the danger of multiple liability. Moreover, statutory interpleader requires at least "minimal" diversity of citizenship between two or more of the adverse claimants and requires an amount in controversy. The Director Defendants have not sufficiently pled diversity of citizenship between the third-party plaintiffs and the third-party defendants as required by 28 U.S.C. § 1332(a)(1). The Director Defendants have also failed to deposit the "stake" with the Court or post an adequate bond as required by statute. 28 U.S.C. § 1335(a)(2).

"whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978); *W.R. Grace & Co. v. Continental Cas. Co.,* 896 F.2d 865, 871 (5th Cir.1990). Pendent-party jurisdiction involves jurisdiction over parties not named in claims properly before the federal court and over whom there is no independent basis of federal jurisdiction. Note, Pendent Party Jurisdiction After *Finley v. United States:* A Trend Toward Its Abolition, 24 Ga.L.Rev. 447, 453–54 (1990); A. Miller, Ancillary and Pendent Jurisdiction, 26 S.Tex.L.J. 1, 5–11 (1985). The state law claims of the Director Defendants against various third-parties might be ancillary, but since they would have necessitated jurisdiction over new parties not named in any claim independently cognizable by the federal court, this court will consider the question raised as one involving pendent-party jurisdiction. *Eagle Properties, Ltd v. Scharbauer,* 807 S.W.2d at 719 n. 1; *see also Finley v. United States,* 490 U.S. 545, 548, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989); *Federal Deposit Ins. Corp. v. Israel,* 739 F.Supp. 1411, 1412 (C.D.Cal.1990).

In *Finley,* the U.S. Supreme Court articulated pendent-party jurisdiction as "jurisdiction over parties not named in any claim that is independently cognizable by the federal court." *Finley,* 490 U.S. at 549, 109 S.Ct. at 2006.[12] It is not sufficient that the federal and nonfederal claims "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding," as required for pendent claim jurisdiction under *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Finley,* 490 U.S. at 549, 109 S.Ct. at 2006–07. Rather,

there must also be "an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim." *Finley,* 490 U.S. at 551, 109 S.Ct. at 2007, quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978).

■ Pendent-party jurisdiction, therefore, may not be exercised unless the text of a statute grants, or illustrates an intent to grant, jurisdiction over additional parties.

In a similar case involving the FSLIC, the Ninth Circuit determined that jurisdiction existed over a third-party complaint, where the FSLIC had an interest in the outcome. In *California Union Ins. v. American Diversified Sav.,* 914 F.2d 1271 (9th Cir.1990), the FSLIC brought claims against directors of a collapsed thrift institution. One of the directors filed a third-party complaint against an insurer. The court found that 12 U.S.C. § 1730(k)(1) granted jurisdiction over the third-party claim. This differs from the present case in two respects. First, 12 U.S.C. § 1730(k)(1) contains broader language than 12 U.S.C. § 1819, referring to "any civil action, suit, or proceeding to which the [FSLIC] shall be a party," as opposed to "all suits ... to which the FDIC shall be a party." Second, the court in *California Union* based its decision in part on the fact that the FSLIC had a "clear stake" in the director's claim against the insurer and even joined the director in his motion for summary judgment. The FDIC, in the instant action, has no real interest in the Director Defendants Third–Party Claims.

In *Federal Deposit Ins. Corp. v. Ohara's, Inc.,* 713 F.Supp. 966 (N.D.Miss. 1989), the court there held that in a suit brought by the FDIC–Corporate, no pen-

---

12. The Court there held that the Federal Tort Claims Act does not permit the exercise of pendent-party jurisdiction over additional parties to whom no independent basis for federal jurisdiction exists. The Court found that the most significant element of "posture" was the fact that the added claims involved added parties over whom there was no independent basis for jurisdiction. The Court read the statute narrow-ly and found that it did not permit the exercise of jurisdiction over actions against parties other than the United States. The Court emphasized the rule expressed in precedent that "a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties." *Finley,* 490 U.S. at 556, 109 S.Ct. at 2010.

dent party jurisdiction existed over FDIC–Receiver inasmuch as 12 U.S.C. § 1819 specifically excludes the FDIC–Receiver from the exercise of subject matter jurisdiction in suits which involve only the rights or obligations of depositors, creditors, stockholders and the state bank under state law. Moreover, in *Fair v. NCNB Texas Nat'l Bank*, 733 F.Supp. 1099 (N.D.Tex.1990), the court concluded ancillary or pendent-party jurisdiction would not be exercised where such a move would not serve the interests of judicial economy and convenience. In that case however, the federal claims were dismissed leaving only the pendant-party claims. Neither of these cases relies upon *Finley*, however.

Federal courts since *Finley*, but before the enactment of 28 U.S.C. § 1367, have read jurisdiction-granting statutes narrowly. *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d at 719–20. This type of statutory interpretation has often resulted in finding a lack of pendent-party jurisdiction. *See, e.g., Iron Workers Pension Fund v. Terotechnology*, 891 F.2d 548 (5th Cir.1990) (denying pendant-party jurisdiction in suit under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(e)), *cert. denied sub nom.*, 497 U.S. 1024, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990); *Sarmiento v. Texas Bd. of Veterinary Medical Ex'rs*, 939 F.2d 1242, 1248 (5th Cir.1991) (denying pendant-party jurisdiction under 42 U.S.C. § 1983); *Marshall v. Southwestern Bell Tel. Co.*, 760 F.Supp. 113, 114 (E.D.Tex. 1991) (Title VII and ADEA do not provide independent jurisdictional basis over pendant-party action).

██ As no independent basis exists for jurisdiction over these pendant-party claims this court must scrutinize the relevant statute that confers jurisdiction on this court. In *Federal Deposit Ins. Corp. v. Israel*, 739 F.Supp. 1411, 1413 (C.D.Cal.1990), the court interpreted 12 U.S.C. § 1819, and found that it explicitly grants jurisdiction only over claims to which the FDIC is a party. The court concluded that it had no subject matter jurisdiction over the defendants' third-party claims. *Federal Deposit*

*Ins. Corp. v. Israel*, 739 F.Supp. at 1414. The statute reads:

> Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States.

12 U.S.C. § 1819(b)(2) (West 1989).

██ This statute cannot be interpreted to mean that everything the FDIC touches, it "federalizes." *Yankee Bank for Finance & Savings v. Task Associates,* 731 F.Supp. 64, 67 (N.D.N.Y.1990). In *Federal Deposit Ins. Corp. v. Israel,* much like the case at hand, the FDIC was the plaintiff and certain defendants filed cross-claims and third-party claims against new parties which were exclusively state-law claims for indemnification. Applying *Finley,* the court squarely addressed the question of whether 12 U.S.C. § 1819 affirmatively grants jurisdiction over cross-claims of this nature, permitting the federal court to adjudicate those claims on the merits. After careful examination of the language of the statute and federal decisions interpreting other jurisdictional statutes, the court held that the terms "civil actions" or "civil suits" refer to specific claims, not just "the general theme of the suit," and that the court should not exercise jurisdiction over the third-party claims. *Federal Deposit Ins. Corp. v. Israel,* 739 F.Supp. at 1414. That decision accords with the canon that a congressional grant of jurisdiction should be read narrowly, *Healy v. Ratta,* 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248 (1934), and that "a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties." *Finley v. United States,* 490 U.S. at 556, 109 S.Ct. at 2010. Although the *Israel* court found that it may be fair to assert "that the Finley rule is nonsensical ... [the court observed that that view] is clearly not the state of the law." *Federal Deposit Ins. Corp. v. Israel,* 739 F.Supp. at 1414.

In discussing the hardships to the parties the court noted that there was:

[n]o doubt [that] this order makes adjudication of the present controversy even more cumbersome. It requires the ... defendants to pursue claims factually related to this litigation in a separate forum. Nevertheless, this is what the law commands.[13] The implications upon the application of 12 U.S.C. § 1819 and other jurisdictional statutes if it were otherwise would be disagreeable.

*Federal Deposit Ins. Corp. v. Israel,* 739 F.Supp. at 1414. (footnote added)

In light of *Finley v. United States, Federal Deposit Ins. Corp. v. Israel,* and *Eagle Properties, Ltd. v. Scharbauer,* and based on this court's reading of the relevant jurisdiction statute, 12 U.S.C. § 1819, this court finds that it does not have jurisdiction over the third-party claims brought by the Director Defendants and the subsequent cross-claims for indemnification filed before the effective date of 28 U.S.C. § 1367.

#### 4. *Liability under FIRREA § 1821(k)*

■■■ The Director Defendants seek to dismiss the FDIC's state law claims arguing that 12 U.S.C. § 1821(k) limits their liability to actions founded on gross negligence or a higher state of culpability. The Defendants contend that the FDIC's other state law claims are preempted under the statute.

Several courts have found that the plain language of the statute establishes that an action based on state law claims, other than gross negligence, may be maintained. The last sentence of § 1821(k) states "Nothing in this paragraph shall impair or affect any right of the corporation under other applicable law." The FIRREA section that permits the FDIC to seek damages for conduct amounting to or exceeding gross negligence is not exclusive and does not preempt state law claims premised on conduct that does not amount to gross negligence. *Federal Deposit Ins. Corp. v. Canfield,* 957 F.2d 786 (10th Cir.1992); *Federal*

*Deposit Ins. Corp. v. Fay,* 779 F.Supp. 66, 67 (S.D.Tex.1991); *Federal Deposit Ins. Corp. v. Black,* 777 F.Supp. 919, 921–22 (W.D.Okl.1991).

### III. CONCLUSION

This Court having considered all other contentions presented concludes, for the reasons set forth above, that the Plaintiff's Motions to Dismiss the Director Defendants' Counterclaims should be granted; the Director Defendants' Motion to Dismiss the FDIC's state law claims should be denied; and Defendant Baker, Brown's motion to dismiss the Director Defendants' Third–Party Claims and Cross–Claims should be granted. The third-party complaints and crossclaims are dismissed without prejudice for lack of jurisdiction.

For the purposes of clarification the remaining parties to this action, in this forum, are: (1) the FDIC; (2) the Director Defendants; and (3) the law firm of Baker, Brown, Sharman & Parker.

---

13. *Finley* declared " 'neither the convenience of the litigants nor considerations of judicial economy can suffice to justify' " jurisdiction over state law claims involving additional parties without an independent basis for jurisdiction. *Loeber v. Bay Tankers, Inc.,* 924 F.2d 1340, 1346 (5th Cir.1991) (admiralty jurisdiction covers pendent-party actions).