**Reversed and Remanded and Opinion Filed February 18, 2022**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-20-00835-CV**
_____

**G FORCE FRAMING LLC, KERRY GRAVES, KERRY GRAVES ON BEHALF OF G FORCE FRAMING LLC, AND KERRY GRAVES D/B/A G FORCE FRAMING, Appellants**
**V.**
**MACSOUTH FOREST PRODUCTS, L.L.C. V. STONELEIGH CONSTRUCTION COMPANY, LLC, SC SWITCHYARD, LLC, XL SPECIALLY INSURANCE COMPANY AND TRAVELERS SURETY AND CASUALTY COMPANY, ET AL., Appellees**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-04925**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Pedersen, III

In seven issues, appellants challenge the trial court's final judgment, which incorporated prior rulings on three dispositive motions. Appellants first assert the trial court erred in granting appellees' motion for summary judgment on G Force Framing LLC's (G Force) claims based on G Force's prior tax forfeiture when (i) G Force paid for reinstatement; (ii) G Force filed its claims within three years of its forfeiture; and (iii) appellees failed to plead that G Force lacked capacity. Second,

appellants assert the trial court erred in in granting appellees' Rule 91a motion to dismiss when (i) appellants stated proper claims for relief and (ii) the trial court did not allow or consider G Force's and Kerry Graves's amended claims. Third, appellants assert the trial court erred in granting appellees' motion for partial summary judgment to discharge G Force's mechanic's liens. We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

G Force was formed on April 1, 2014 and went through tax forfeiture on January 29, 2016. Despite its forfeiture, G Force entered into two subcontracts with Stoneleigh Construction Company, LLC (Stoneleigh) on October 18, 2016 to perform framing work on two sites in Frisco, Texas. On August 16, 2017, G Force entered a third subcontract with Stoneleigh to perform work on a site in Carrollton, Texas. Disputes arose during construction. On April 6, 2018, G Force's president, Graves, filed affidavits for mechanic's and materialman's liens (Mechanic's Liens)—describing unpaid claims in connection with the agreements between G Force and Stoneleigh.

On April 13, 2018, Stoneleigh sued G Force for breach of contract and negligence. On November 12, 2018, G Force filed twenty-four counterclaims against Stoneleigh; SC Switchyard, LLC; and SC Frisco I, LP. On February 4, 2019, G Force filed additional counterclaims and cross-claims against, inter alia, Stoneleigh; SC

Frisco I; Travelers Casualty and Surety Company of America; and XL Specialty Insurance Company.

On September 3, 2019, appellees moved for summary judgment on all of G Force's claims—asserting that since G Force was forfeited on January 29, 2016, G Force had no capacity to sue on post-dissolution contractually based claims (Claims Summary Judgment). G Force responded to the Claims Summary Judgment, submitting summary judgment evidence of: (i) a September 23, 2019, Tax Clearance Letter for Reinstatement from the Texas Comptroller of Public Accounts concerning G Force providing "The referenced entity has met all franchise tax requirements and is eligible for reinstatement through May 16, 2020[]" and (ii) a September 23, 2019 Certificate of Filing of G Force from the Office of the Secretary of State stating G Force "has been reinstated to active status on the records of this office."

On January 22, 2020, G Force and Graves filed their first amended counterclaims, which included an alternative claim, as count 25, that:

> 122. In the alternative, in the event it is determined G Force Framing LLC is unable to pursue Counterclaims 1 through 25 for any reason, including forfeiture of limited liability company status, Kerry Graves asserts Counterclaims 1 through 25 in his individual capacity doing business as G Force Framing LLC aka G Force.

On January 28, 2020, appellees moved to dismiss this count of Graves's alternative claims (Motion to Dismiss). Coupled with the Claims Summary Judgment, appellees sought to dispose of all of appellants' claims.

On February 4, 2020, the trial court signed an order granting all relief sought in appellees' Claims Summary Judgment—specifying:

> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Counter-Defendant G Force Framing LLC's failure to accomplish reinstatement within the three-year period following its forfeiture resulted in the expiration of its post-termination claims, and therefore, Counter-Plaintiff G Force Framing LLC's counterclaims against the Stoneleigh Defendants are dismissed with prejudice.

With G Force's claims dismissed, G Force and Graves filed their second amended counterclaims and crossclaims on February 19, 2020, in which Graves asserted claims (i) "on behalf of" G Force[1] and (ii) as himself, doing business as G Force. Although Graves asserted claims "on behalf of" G Force, appellees' motion to dismiss prayed for dismissal of only Graves's individual claims, doing business as G Force.

On April 1, 2020, appellees filed a motion for partial summary judgment to discharge G Force's Mechanic's Liens (Liens Summary Judgment). On April 13, 2020, the trial court granted appellees' Motion to Dismiss, which provided:

> It is hereby ORDERED that the Motion to Dismiss the claim of Kerry Graves Individually (Count 25) is GRANTED.

---

[1] Appellants' second amended counterclaims and crossclaims refer to the claims that Graves asserted "on behalf of" G Force as "derivative-like."

> Due to the forfeiture period and potential limits on [G Force] to pursue its claims, "Kerry Graves on behalf of [G Force]" asserts, in the alternative, counterclaims and crossclaims by "Kerry Graves on behalf of [G Force]", in order to assert *derivative-like* claims to preserve and protect the assets, including claims, of [G Force].

(emphasis added).

On May 12, 2020, the trial court granted appellees' Liens Summary Judgment, thereby discharging G Force's Mechanic's Liens. On July 21, 2020, the trial court signed two orders that granted appellees' request for attorney's fees and costs relating to their Motion to Dismiss. For ease, we provide the following chart of the pertinent orders.

| Motion | Disposition | Related Subsequent Orders |
|---|---|---|
| Appellees' Claims Summary Judgment | "Counter-Plaintiff G Force Framing LLC's counterclaims against the Stoneleigh Defendants are dismissed with prejudice." | None |
| Appellees' Motion to Dismiss | "It is hereby ORDERED that the Motion to Dismiss the claim of Kerry Graves Individually (Count 25) is GRANTED." | Two orders granting appellees' attorney's fees. |
| Appellees' Liens Summary Judgment | "It is hereby ORDERED that the Motion for Partial Summary Judgment for Decree to Discharge Mechanics Lien is GRANTED." | None |

The trial court signed a final judgment, which incorporated the rulings above, on August 24, 2020, and which provided "[a]ny and all relief requested in this cause, which is not previously granted, is denied."[2] This appeal followed.

---

[2] We note that appellants listed MacSouth Forest Products, L.L.C. as an appellee in this case. MacSouth filed suit against G Force, Stoneleigh, SC Switchyard, LLC, and XL Specialty Insurance Company in the 160th Judicial District Court of Dallas County. MacSouth also filed suit against G Force, Stoneleigh, SC Frisco I, LLC, and Travelers Casualty and Surety Company of America in the 298th Judicial District Court of Collin County. MacSouth's suits were both consolidated into the proceeding underlying this appeal.

The final judgment explains MacSouth's various claims were resolved or otherwise dismissed. MacSouth filed no appellee's brief in this appeal, and MacSouth was neither a movant nor a non-movant in the rulings and orders that appellants challenge. For those reasons, we have not addressed MacSouth in our resolution of appellants' issues.

## II. ISSUES RAISED

Appellants raise seven issues to our Court, which we reproduce verbatim:[3]

I.  The Trial Court erred in granting the Stoneleigh Parties' Motion for Summary Judgment because the Business Organizations Code did not apply to G Force Framing LLC's forfeiture for failure to pay franchise taxes and subsequent reinstatement.

II.  The Trial Court erred in granting the Stoneleigh Parties' Motion for Summary Judgment based on forfeiture because the Stoneleigh Parties failed to plead lack of capacity.

III.  The Trial Court erred in granting the Stoneleigh Parties' Motion for Summary Judgment based on forfeiture and dismissing G Force's claims with prejudice because G Force should have been allowed an opportunity to cure and amend its pleadings in response to the Trial Court's ruling that it "lacked capacity". [sic]

IV.  The Trial Court erred in granting the Stoneleigh Parties' Motion for Summary Judgment because if Business Organizations Code did apply, G Force's claims were filed with three (3) years of G Force's forfeiture.

V.  The Trial Court erred in granting the Stoneleigh Parties' Motion to Dismiss because the Alternative G Force Claimants stated proper claims for relief in their Counterclaims and Crossclaims, and the Trial Court erred in refusing to allow and consider G Force's 2nd Amended Counterclaims and Crossclaims in response to the Stoneleigh Parties' Rule 91a Motion to Dismiss.

VI.  The Trial Court erred in granting the Stoneleigh Parties' Motion for Partial Summary Judgment to Remove Liens because the Liens were previously released by the Stoneleigh Parties' filing of Indemnity Bonds releasing the Liens.

---

[3] Throughout appellants' briefing, appellants fail to cite the evidence in the record. Instead, appellants cite to their own pleadings and motions, which are not evidence. *Sher v. Fun Travel World, Inc.*, 118 S.W.3d 500, 502 (Tex. App.—Dallas 2003, no pet.) ("[P]leadings are not competent summary judgment evidence, even if sworn or verified.). "We are not responsible for searching the record for facts that may be favorable to a party's position." *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.).

VII. The Trial Court erred in granting the Stoneleigh Parties' attorneys' fees on the basis of the Rule 91a Motion to Dismiss because the Motion was improperly granted.

### III. STANDARDS OF REVIEW

*i. Summary Judgment*

Because summary judgment is a question of law, a trial court's summary judgment decision is reviewed de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316–17 (Tex. 2019); *Flood v. Katz*, 294 S.W.3d 756, 761 (Tex. App.—Dallas 2009, pet. denied) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015) (citing, inter alia, TEX. R. CIV. P. 166a(c)). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We credit evidence favorable to that party if reasonable jurors could, and we disregard contrary evidence unless reasonable jurors could not. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

"When a trial court's order does not specify the grounds for its summary judgment, an appellate court must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are

–7–

meritorious." *Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, at \*22 (Tex. App.—Dallas Nov. 4, 2015, no pet.) (mem. op. on reh'g). However, when the trial court's summary judgment order does specify a ground on which it was granted, we limit our review to that ground. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625-26 (Tex. 1996) (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993)) (plurality opinion) (when the "trial court's order explicitly specifies the ground relied on for the summary judgment ruling ... the summary judgment can only be affirmed if the theory relied on by the trial court is meritorious"); *Walters v. Livingston*, 519 S.W.3d 658, 664 (Tex. App.—Amarillo 2017, no pet.) (limiting consideration on appeal to two theories relied on by trial court in order).

### ii.     Rule 91a Motion to Dismiss

Under Texas Rule of Civil Procedure 91a, "a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." *See* TEX. R. CIV. P. 91a.1. Dismissal is appropriate under Rule 91a if the allegations made in the petition, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought or no reasonable person could believe the facts pleaded. *See id.* When considering a motion to dismiss, the court "must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59" of the rules of civil procedure. TEX. R. CIV. P. 91a.6. We review the merits of a motion to dismiss pursuant to Rule 91a under a

de novo standard because the availability of a remedy under the facts alleged is a question of law. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016).

To determine whether dismissal is required, we have explained that:

> we apply the fair-notice pleading standard applicable in Texas to determine whether the allegations of the petition are sufficient to allege a cause of action. *See Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 599 (Tex. App.—Corpus Christi 2017, no pet.) (applying notice pleading standard to rule 91a motion to dismiss); *Koenig v. Blaylock*, 497 S.W.3d 595, 599 (Tex. App.—Austin 2016, pet. denied) ("We apply the fair-notice pleading standard to determine whether the allegations of the petition are sufficient to allege a cause of action."). Our procedural rules merely require that the pleadings provide fair notice of the claim and the relief sought such that the opposing party can prepare a defense. *Reaves*, 518 S.W.3d at 599-600 (citing *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding) (citing Tex. R. Civ. P. 45 & 47)). A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. *Id.* at 600 (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 346 (Tex. 2011) ). "Even the omission of an element is not fatal if the cause of action may be reasonably inferred from what is specifically stated." *Lipsky*, 460 S.W.3d at 590 (internal quotations omitted). Under this standard, courts assess whether an opposing party can ascertain from the pleading the nature of the controversy, its basic issues, and the type of evidence that might be relevant. *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007); *Reaves*, 518 S.W.3d at 600.

*Thomas v. 462 Thomas Family Properties, LP*, 559 S.W.3d 634, 639–40 (Tex. App.—Dallas 2018, pet. denied).

# IV. ANALYSIS

**Issues One, Two, Three and Four: Whether the Trial Court Erred in Granting Appellees' Claims Summary Judgment, Thereby Dismissing G Force's Claims**

In their first four issues, appellants assert the trial court erred in granting appellees' Claims Summary Judgment because G Force was never a "terminated entity" under the Texas Business Organizations Code (TBOC) such that its claims expired. Appellees respond that because (i) G Force was forfeited by tax forfeiture on January 29, 2016 and (ii) was not reinstated on or before January 29, 2019, G Force's claims expired under the Texas Tax Code's provisions regarding forfeiture and the TBOC's provisions regarding terminated entities. Because the trial court granted appellees' Claims Summary Judgment based upon G Force's tax forfeiture, alleged termination, and over three-year delay in reinstatement, we limit our review to those grounds. *See Cates*, 927 S.W.2d at 625-26. Our resolution of appellants' first issue disposes of their first four issues.

Whether G Force's tax forfeiture under the Texas Tax Code and failure to timely reinstate under the TBOC amounted to a termination is an issue of statutory interpretation that we review de novo. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) ("We review matters of statutory construction de novo."). "In construing a statute, our objective is to determine and give effect to the Legislature's intent." *Id.* (citing *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); First, we look to the "plain and common meaning of the statute's words." *Gonzalez*,

82 S.W.3d at 327. If a statute's meaning is unambiguous, "we generally interpret the statute according to its plain meaning." *Id.* "[W]e determine legislative intent from the entire act and not just its isolated portions." *Id.* (citing *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex.1998)). "Thus, we 'read the statute as a whole and interpret it to give effect to every part.'" *Id.* (quoting *Jones*, 969 S.W.2d at 432).

A domestic entity exists perpetually unless otherwise provided in the governing documents of the entity, and a domestic entity may be terminated in accordance with TBOC code or the Texas Tax Code. TEX. BUS. ORGS. CODE ANN. § 3.003.[4] Appellees assert that G Force became a terminated entity under the Texas Tax Code and TBOC. Appellees draw our attention to Texas Tax Code § 171.2515, which provides that:

> The comptroller shall forfeit the corporate privileges of a corporation on which the franchise tax is imposed if the corporation: . . . does not pay, within 45 days after the date notice of forfeiture is mailed, a tax imposed by this chapter or does not pay, within those 45 days, a penalty imposed by this chapter relating to that tax.

TEX. TAX CODE ANN. § 171.251. Here, it is undisputed that G Force is subject to the Texas Tax Code as a "taxable entity," TAX § 171.0002(a), and that the comptroller forfeited G Force's right to transact business in this state, TAX § 171.2515 (a). It is undisputed that G Force did "not revive its forfeited privileges within 120 days after the date that the privileges were forfeited." TAX § 171.309. The effects of such a

---

[4] We note that no part of subchapter 171 of the Texas Tax Code provides for the "termination" of a business entity. *See generally* TEX. TAX CODE ANN. § 171.001–.909.

–11–

forfeiture under subchapter 171 of the Texas Tax Code are "(1) the corporation shall be denied the right to sue or defend in a court of this state; and (2) each director or officer of the corporation is liable for a debt of the corporation as provided by Section 171.255 of [the] code." TAX § 171.252(1–2). Accordingly, appellees argue that G Force became a "terminated entity" as defined in TBOC § 11.001:

> (4) "Terminated entity" means a domestic entity the existence of which has been:
>> (A) terminated in a manner authorized or required by this code, unless the entity has been reinstated in the manner provided by this code; or
>> (B) forfeited pursuant to the Tax Code, unless the forfeiture has been set aside.

BUS. ORGS. § 11.001(4). Appellees argue that—despite G Force's later reinstatement—G Force's inaction under the above sections of the Texas Tax Code from January 29, 2016, to January 29, 2019, resulted in its involuntary termination under the TBOC. We disagree with appellees' interpretations of the Texas Tax Code and TBOC.

We first address whether G Force was involuntarily terminated under the TBOC. In 2003, the Texas Legislature recodified the Texas Business Corporations Act (TBCA) into the TBOC; the TBOC provided that it would become effective as of January 1, 2010—even as to (i) corporations formed before the TBOC was recodified and (ii) corporations that had yet not affirmatively adopted the TBOC. *See* Act of March 30, 1955, 54th Leg., R.S., ch. 64, 1955 Tex. Gen. Laws 239, *repealed and recodified by* Act of May 13, 2003, 78th Leg., R.S., ch. 182, § 1,

–12–

sec. 402.005, 2003 Tex. Gen. Laws 267, 593. Under the repealed TBCA, one of the grounds for involuntary dissolution of a corporation by the Secretary of State was for a corporation's failure to pay its franchise taxes. *See* Act of May 25, 1981, 67th Leg., R.S., ch. 297, § 25(B)(1), 1981 Tex. Gen. Laws 831, 843 (repealed 2003) (providing for forfeiture when a corporation had failed "to pay any fees, franchise taxes[,] or penalties prescribed by law").[5] Regarding involuntary termination, the TBOC currently provides:

> (b) The secretary of state may terminate a filing entity's existence if the secretary finds that:
>> (1) the entity has failed to, and, before the 91st day after the date notice was mailed has not corrected the entity's failure to:
>>> (A) file a report within the period required by law or pay a fee or penalty prescribed by law when due and payable; or
>>> (B) maintain a registered agent or registered office in this state as required by law; or
>> (2) the entity has failed to, and, before the 16th day after the date notice was mailed has not corrected the entity's failure to, pay a fee required in connection with the filing of its certificate of formation, or payment of the fee was dishonored when presented by the state for payment.

---

[5] We reproduce the complete, pertinent language of the now-repealed and recodified TBCA article 7.01:

> B. A corporation may be dissolved involuntarily by order of the Secretary of State when it is established that it is in default in any of the following particulars:
>> (1) *The corporation* has failed to file any report within the time required by law, or *has failed to pay any fees, franchise taxes or penalties prescribed by law when the same have become due and payable*;
>> (2) The corporation has failed to maintain a registered agent in this state as required by law; or
>> (3) The corporation has failed to pay the filing fee for the corporation's articles of incorporation or the initial franchise tax deposit, or the fee or tax was paid by an instrument that was dishonored when presented by the state for payment.

Act of March 30, 1955, 54th Leg., R.S., ch. 64, 1955 Tex. Gen. Laws 239 (repealed and recodified 2003) (emphasis added).

BUS. ORGS. § 11.251(b). Thus, the legislature removed failure to pay franchise taxes as a basis for involuntarily dissolving a corporation, leaving only the previous TBCA categories of fees or penalties prescribed by law. *See id.* "We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "'[I]t is settled that every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible.'" *Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000) (quoting *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963)). Accordingly, we must presume that the Legislature purposefully omitted nonpayment of franchise tax as a basis for involuntary termination when it enacted the TBOC and repealed the TBCA. *See Combs*, 340 S.W.3d at 439; *Del Indus., Inc.*, 35 S.W.3d at 593; *see, e.g.*, *Wallace Constr. & Dev. Co. v. Madison Plaza, LP*, No. 09-18-00364-CV, 2019 WL 4677508, at *4 (Tex. App.—Beaumont Sept. 26, 2019, pet. denied) (mem. op.). We must conclude that G Force was not involuntarily terminated under BUS. ORGS. § 11.251(b).

We next address whether G Force is a "terminated entity" under TBOC for failing to pay its franchise tax under the Texas Tax Code. Section 171.313 of the Texas Tax Code provides that if a corporation's charter or certificate of authority has been forfeited, "a stockholder, director, or officer of the corporation at the time

–14–

of the forfeiture . . . may request in the name of the corporation that the secretary of state set aside the forfeiture of the charter or certificate." TAX § 171.313(a). If, as here, a request is made and the delinquent tax is paid, "the secretary shall set aside the forfeiture of the corporation's charter or certificate of authority." TAX § 171.313. It is undisputed that G Force's tax forfeiture was set aside in September 2019, resulting in its reinstatement "to active status on the records of [the Texas Secretary of State]."

Nevertheless, appellees argue that G Force had only three years from its date of tax forfeiture to reinstate. Appellees direct us to three sections of the TBOC: (i) TBOC § 11.356, which provides a terminated filing entity's limited survival after termination; (ii) TBOC § 11.359, which enumerates a terminated entity's extinguishment of existing claims; and (iii) TBOC § 11.253, which provides that a terminated entity "is considered to have continued in existence without interruption from the date of termination," if the terminated entity was reinstated before the third anniversary of the date of its involuntary termination. BUS. ORGS. §§ 11.356, 11.359, 11.253. However, each of these sections of the TBOC applies to a terminated entity.

As concluded above, G Force was not involuntarily terminated under TBOC § 11.251(b). Furthermore, Texas Tax Code § 171.313 contains no time limitation for setting aside a tax forfeiture, so G Force's reinstatement under the Texas Tax Code after three years is not dispositive. TAX § 171.313. Appellees direct us to our opinion in *Donica Group, LP v. Thompson Excavating, Inc.*, wherein we held an entity that

–15–

failed to pay its franchise taxes was a "terminated entity," subject to the limitations of limited survival after termination under TBOC § 11.356. No. 05-19-00235-CV, 2020 WL 57340, at *3 (Tex. App.—Dallas Jan. 6, 2020, no pet.) (mem. op.). However, Thompson Excavating, Inc. in *Donica Group, LP* did not reinstate after its most recent, pertinent forfeiture. *Id.* Unlike in *Donica Group, LP*, G Force was reinstated under the tax code. Under TBOC § 11.001(4)(B), this reinstatement and setting aside of G Force's tax forfeiture removed its status as a "terminated entity." BUS. ORGS. § 11.001(4)(B). For those reasons, we must conclude G Force was not a terminated entity under the TBOC § 11.001(4)(B) and therefore not subject to the limitations found in TBOC §§ 11.356, 11.359, and 11.253. *See* BUS. ORGS. §§ 11.001(4), 11.356, 11.359, 11.253. As G Force was not a terminated entity, it retained the ability to pursue claims. *See* BUS. ORGS. § 3.003. Accordingly, we must conclude that the trial court erred in granting appellees' motion for summary judgment on G Force's claims. We sustain G Force's first issue and pretermit any further discussion of G Force's issues two, three, and four.

**Issue Five: Whether the Trial Court Erred in Dismissing Graves's Counterclaims and Cross Claims, Raised Individually[6]**

In their fifth issue, appellants assert the trial court erred in dismissing Graves's counterclaims and cross-claims plead in their amended pleadings and raised in the

---

[6] We note that, in their briefing, appellants employ the term "Alternative G Force Claimants." Appellants do not define that term, and appellants' pleadings refer to only G Force and Graves (both on behalf of G Force and as a "d/b/a"). We must therefore presume that "Alternative G Force Claimants" includes Graves.

alternative—in the event the trial court found G Force was a terminated entity. It is undisputed that the agreements were between G Force and Stoneleigh—not Graves in his individual capacity. As we have concluded above, no termination bars G Force from pursing its claims against Stoneleigh; G Force retains title to its claims. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990), *superseded by statute on other grounds as stated in Sneed v. Webre,* 465 S.W.3d 169, 185 n.10 (Tex. 2015); *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 775 (Tex. 2020)

In their second amended counterclaims and crossclaims, Graves sought to assert G Force's claims (i) directly—doing business as G Force—and (ii) "derivative-like"—on behalf of G Force. We first address Graves's "doing business as" assertion of G Force's claims. Regarding a stakeholder's direct assertion of a legal entity's claims, the Texas Supreme Court has explained:

> "Ordinarily," for example, "the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation." *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) (quoting *Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 221 (1942)). "A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong" in the form of reduced stock value, because all stockholders will be made whole if the corporation obtains compensation. *Id.* Rather, "to recover individually, a stockholder must prove a personal cause of action and personal injury." *Id.*

*Pike*, 610 S.W.3d at 775. As an individual stakeholder in G Force, Graves does not have a right to recover personally for harms done to G Force. *Id.*; *see Wingate*, 795

–17–

S.W.2d at 719. Accordingly, Graves is barred from directly pursing G Force's claims.[7]

The trial court's order refers to "Count 25" and Graves's claims raised "[i]ndividually;" that is, the trial court's order barred Graves from directly pursing G Force's claims. Indeed, appellees' Motion to Dismiss specifically requested dismissal of these direct claims of Graves "doing business as" G Force. Thus, the trial court did not err in dismissing Graves's direct counterclaims and cross claims, which belonged to G Force, when he raised those claims individually.

Furthermore, the trial court entered no specific ruling or order on Graves's alternative "derivative-like" claims raised "on behalf of" G Force. Because we conclude above that G Force may pursue its claims directly, we pretermit any further discussion of Graves's alternative "derivative-like" claims. As discussed above, the dispositive question in this appeal is whether G Force can pursue *its* claims after a tax forfeiture, when its reinstatement occurred more than three years after the date of the tax forfeiture. We have concluded G Force can pursue its claims. The resolution of that issue above obviates the necessity to address Graves's alternative "derivative-like" claims. TEX. R. APP. P. 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the

---

[7] We note appellants raised a sub-issue that "in the event a corporation is unable to pursue its claims due to franchise tax forfeiture, the company owner may pursue the claims on behalf of the company." We pretermit any discussion of this sub-issue because of our conclusion that no termination bars G Force from pursing its claims against Stoneleigh.

–18–

parties of the court's decision and the basic reasons for it."). To the extent Graves's alternative "derivative-like" claims raised "on behalf of" G Force are germane to appellants appeal, appellants have failed to adequately brief the issue. TEX. R. APP. P. 38.1(h-i). We overrule appellants' fifth issue.

**Issue Six: Whether the Trial Court Erred in Discharging the Mechanic's Liens**

In their sixth issue, appellants assert the trial court erred in granting appellees' Liens Summary Judgment—which discharged G Force's Mechanic's Liens and granted appellees' request for attorney's fees—because the liens were *already* discharged in lieu of Stoneleigh's filed indemnity bonds. That is, appellants assert the issue over the discharge of the Mechanic's Liens was moot at the time appellees moved for summary judgment. Appellees respond (i) that their indemnity bonds did not discharge the Mechanic's Liens and (ii) that the dismissal of G Force's claims meant that no debts were owed to G Force, thereby foreclosing G Force's Mechanic's Liens.

Texas Property Code § 53.021 provides:

A person has a lien if the person, under a contract with the owner or the owner's agent, trustee, receiver, contractor, or subcontractor:

(1) labors or furnishes labor or materials for construction or repair of an improvement[.]

TEX. PROP. CODE ANN. § 53.021(1). Under Texas Property Code § 53.052:

(c) A claimant other than an original contractor claiming a lien arising from a residential construction project must file an affidavit with the

–19–

county clerk not later than the 15th day of the third month after the later of:

> (1) the month the claimant last provided labor or materials; or
> (2) the month the claimant would normally have been required to deliver the last of specially fabricated materials that have not been actually delivered.

TEX. PROP. CODE ANN. § 53.052(c)(1–2). Here G Force, as an entity that labored for construction of an improvement as a subcontractor, filed its affidavits of Mechanic's Liens in association with the three agreements it entered with Stoneleigh. *See* PROP. §§ 53.021(1), 53.052(c)(1–2).

The Texas Property Code provides that "[a]n affidavit claiming a mechanic's lien filed under Section 53.052 may be discharged of record by: . . . . filing the bond and notice in compliance with Subchapter H." TEX. PROP. CODE ANN. § 53.157(4) ("Subchapter H" referring to Property Code § 53.171 et seq.). In pertinent part, Texas Property Code § 53.171 provides:

> (a) If a lien, other than a lien granted by the owner in a written contract, is fixed or is attempted to be fixed by a recorded instrument under this chapter, any person may file a bond to indemnify against the lien.
> . . . .
> (c) A mechanic's lien claim against an owner's property is discharged after:
>> (1) a bond that complies with Section 53.172 is filed[.]

TEX. PROP. CODE ANN. § 53.171(a–c). Texas Property Code § 53.172 provides for the requirements of a bond that would function to potentially discharge a mechanic's lien and provides, inter alia:

> The bond must: . . . .

(3) be in an amount that is double the amount of the liens referred to in the bond unless the total amount claimed in the liens exceeds $40,000, in which case the bond must be in an amount that is the greater of 1 ½ times the amount of the liens or the sum of $40,000 and the amount of the liens[.]

TEX. PROP. CODE ANN. § 53.172(3). Here, Stoneleigh filed indemnity bonds related to G Force's Mechanic's Liens. The record shows that G Force's Mechanic's Liens each exceeded $40,000. The record shows Stoneleigh's indemnity bonds were not "the greater of 1 ½ times the amount of the liens or the sum of $40,000 and the amount of the liens." TEX. PROP. CODE ANN. § 53.172(3). Because Stoneleigh's bonds did not meet the requirements of Texas Property Code § 53.172(3), we conclude those indemnity bonds could not have *already* discharged the Mechanic's Liens.[8] We disagree with appellants' assertion that appellees' Liens Summary Judgment was moot.

Nevertheless, appellees' Liens Summary Judgment relies upon the trial court's erroneous dismissal of G Force's claims due to its alleged termination. Relying on *Crawford Services, Inc. v. Skillman Intern. Firm, L.L.C.*, appellees asserted that because G Force's claims were dismissed with prejudice, there was no longer a valid debt upon which the Mechanic's Liens could attach. 444 S.W.3d 265,

---

[8] We note that appellants' live pleading asserts that Stoneleigh's bonds failed to indemnify them for the Mechanic's Liens:

> Counterclaim Plaintiff G Force requests Declaratory Relief pursuant to Texas Civil Practice and Remedies Code Ch. 37 et seq. declaring the Waterford Indemnity Bond amount is insufficient to meet the statutory requirement. The Declaratory Relief requested is essential to full resolution of Counterclaim Plaintiff G Force's Claims, and G Force is entitled to its related Attorneys' Fees and Costs.

–21–

268 (Tex. App.—Dallas 2014, pet. dism'd) ("To prevail on its claim, the lienholder must prove it performed the labor or furnished the materials and the debt is valid."). As we have concluded above, no termination bars G Force from pursing its claims against Stoneleigh. Thus, G Force may proceed on its debt claims against appellees. Coupled with our conclusion that the indemnity bonds did not meet the requirements to discharge the Mechanic's Liens, we must conclude the trial court erred in granting the Liens Summary Judgment. We sustain appellants' sixth issue.

**Issue Seven: Whether the Trial Court Erred in Awarding Appellees Attorneys' Fees Based Upon the Motion to Dismiss**

In their seventh issue, appellants assert the trial court erred in granting appellees' request for attorneys' fees in connection with the Motion to Dismiss. Appellants provide no briefing on this issue beyond the following:

> As noted above, the Trial Court incorrectly granted the Stoneleigh Parties' Motion to Dismiss, so, their attorneys' fees claims should have been denied by the Trial Court as well.

Above, we have overruled appellants' corresponding issue regarding appellees' Motion to Dismiss; we have not reversed the trial court's order on the Motion to Dismiss. Appellants have failed to provide further briefing to challenge the trial court's award of attorneys' fees in connection with the Motion to Dismiss. *See* TEX. R. APP. P. 38.1(h-i); *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.— Dallas 2012, pet. denied). We overrule appellants' seventh issue.

## V.    CONCLUSION

Having (i) sustained appellants' first and sixth issues and (ii) overruled appellants' fifth and seventh issues, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

200835f.p05

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

G FORCE FRAMING LLC, KERRY
GRAVES, KERRY GRAVES ON
BEHALF OF G FORCE FRAMING
LLC, AND KERRY GRAVES
D/B/A G FORCE FRAMING,
Appellants

No. 05-20-00835-CV     V.

MACSOUTH FOREST
PRODUCTS, L.L.C. V.
STONELEIGH CONSTRUCTION
COMPANY, LLC, SC
SWITCHYARD, LLC, XL
SPECIALLY INSURANCE
COMPANY AND TRAVELERS
SURELY AND CASUALLY
COMPANY, ET AL., Appellees

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-04925.
Opinion delivered by Justice
Pedersen, III. Justices Goldstein and
Smith participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants G FORCE FRAMING LLC, KERRY GRAVES, KERRY GRAVES ON BEHALF OF G FORCE FRAMING LLC, AND KERRY GRAVES D/B/A G FORCE FRAMING recover their costs of this appeal from appellees MACSOUTH FOREST PRODUCTS, L.L.C. V. STONELEIGH CONSTRUCTION COMPANY, LLC, SC SWITCHYARD, LLC, XL SPECIALLY INSURANCE COMPANY AND TRAVELERS SURELY AND CASUALLY COMPANY, ET AL.

Judgment entered this 18th day of February, 2022.